812 A.2d 260

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**John WALKER–TURNER, Sr.**

**No. 52 Sept. Term, 2001.**

Court of Appeals of Maryland.

Dec. 9, 2002.

Melvin Hirshman, Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

John Iweanoge, Esq., Rosslyn, Va., for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

The Attorney Grievance Commission (Petitioner), acting through Bar Counsel, filed a petition with this Court on 25 January 2002 for disciplinary action against John W. Walker–Turner, Sr., Respondent, alleging, among other things, a violation of Maryland Rule of Professional Conduct ("MRPC") 5.5(a) (Unauthorized Practice of Law).[1]  We referred the

1.  MRPC 5.5(a) provides that a lawyer shall not "practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction."

matter to Judge Julia B.Weatherly of the Circuit Court for Prince George's County to conduct an evidentiary hearing and make resultant findings of fact and proposed conclusions of law. Following that evidentiary hearing, Judge Weatherly concluded that Respondent violated Rule 5.5(a).

## I.

Judge Weatherly, on 15 August 2002, entered the following Findings of Fact and Conclusions of Law:

Petitioner, the Attorney Grievance Commission of Maryland, filed a Petition for Disciplinary Action charging the violation of Maryland Rules of Professional Conduct 1.1, 1.3, 1.4(a)(b), 1.15(a)(b), 1.16(d), and 5.5(a). However, at the hearing the Petitioner elected to go forward only on the violation of 5.5(a), (Unauthorized Practice of Law), dismissing the other allegations. The Court of Appeals of Maryland, in its Order of January 29, 2002, directed that this matter be heard pursuant to Maryland Rule 16–752(a), by this Court and determined in accordance with Maryland Rule 16–757. The Petition was duly served on the Respondent, who through counsel, filed an Answer to the Petition. Under Rule 16–757(b), the Petitioner, the Attorney Grievance Commission of Maryland, has the burden of proving the averments of the Petition by clear and convincing evidence. A Respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

An investigation of this matter by the Attorney Grievance Commission of Maryland occurred based upon a complaint by Barbara Greenfield. She retained Respondent, John Wayne Walker–Turner, Sr., on April 10, 2001, regarding an employment dispute. The Complainant was employed by the District of Columbia Department of Corrections as a staff clerk and had been suspended for forty-five (45) days, a suspension she desired corrected when she consulted with the Respondent.

The Petitioner's case consisted of the introduction into evidence of Interrogatories propounded to the Respondent and his Answers, a series of Requests for Admissions of Facts and Genuineness of Documents and Respondent's Answer, the deposition of the Respondent, the District of Columbia rule on the unauthorized practice of law, and the client file maintained by the Respondent in his representation of Ms. Greenfield. The Petitioner also called Respondent as its witness.

The Court finds and concludes as follows:

Mr. John Wayne Walker–Turner, Sr. was admitted to the Bar of Maryland on December 16, 1999. Mr. Walker–Turner has never been admitted as a member of the bar of the District of Columbia. After he was admitted in Maryland, Mr. Jonathan Ai, Esquire of Rockville, Maryland provided him office space for approximately six months while he began his legal practice. Then he worked out of Mr. Henry Smith's law office in the District of Columbia for six or seven months. While Mr. Smith did not pay him a salary, Mr. Walker–Turner in his deposition (Plaintiff's exhibit no. 3, page 8) stated Mr. Smith paid him on a case by case basis. He then shared an office with Mr. Rubin Collins, Esquire in the District of Columbia. Mr. Rubin Collins, Mr. William Johnson, and Mr. Walker–Turner operated as a partnership, the three attorneys dividing expenses. They periodically split fees if more than one attorney worked on a given case. Currently, Mr. Collins and Mr. Walker–Turner have an office at 605 Post Office Road, Waldorf, Maryland.

Mr. Walker–Turner testified that he has maintained the following addresses for the purpose of practicing law since his admission to the Maryland bar: 103 N. Adams Street, Rockville, Maryland; 714 G Street, S.E., Washington, DC; 1449 Pennsylvania Avenue, S.E., Washington; and Kennedy Street, N.W., Washington, DC. He also did legal work out of his home on Illinois Avenue in the District of Columbia, however, he did not see clients there. Mr. Walker–Turner in his Answers to Interrogatories stated that all the num-

bers he used for his office phones and fax numbers had a District of Columbia zip code.

On April 10, 2000, Mr. Walker–Turner signed an engagement fee to represent Ms. Greenfield. That engagement letter was entered into at Mr. Walker–Turner's office at 714 G Street, S.E. Washington, DC. He thereafter sent two (2) letters on behalf of Ms. Greenfield to the Director of the Department of Corrections in the District of Columbia. His letterhead gave a District of Columbia address, 714 G Street, S.E., Washington, DC, as well as a Rockville, Maryland address. Those documents were admitted to be genuine, Exhibits 2, 3, and 4 attached to the Request for Admissions. The stationery notes MD after his name, and DC after Mr. Collins' name, designating the jurisdiction in which they were licensed to practice law.

In Response to Bar Counsel's Request, Mr. Walker–Turner responded to Bar Counsel on March 16, 2001. His letterhead gave an address at 1449 Pennsylvania Avenue, S.E., Washington, DC, listing an office telephone number and a fax number with District of Columbia area code 202. (Request for Admissions of Facts and Genuineness of Documents exhibit no. 1). In answer to Interrogatory 25 propounded by the Petitioner, Mr. Walker–Turner could not recall how many clients, if any, he may have seen in the District of Columbia during the period he was in association with an attorney licensed in the District of Columbia. But in his testimony in court, he indicated it had been several. He acknowledged that he practiced law in association with Mr. Collins and Mr. William Johnson, which held itself out as a partnership.

Mr. Walker–Turner testified that when he was retained, he informed Ms. Greenfield that he could not represent her in the District of Columbia courts if litigation was necessary. He would have to have an attorney licensed in the District of Columbia handle the matter. He testified that whenever he entered his appearance in the D.C. Superior Court, his appearance would be moved *Pro Hac Vice* by a licensed D.C. attorney.

Rule 49 (7)(iii) of the District of Columbia Court of Appeals provides that:

> No person who maintains or operates from an office or location for the practice of law within the District of Columbia may be admitted to practice before the Court of the District of Columbia *Pro Hac Vice* unless that person qualifies under another expressed exception under section c thereof.

There are no exceptions that apply to the Respondent. It appears that Mr. Walker–Turner did not understand that because his office was located in the District of Columbia, he was not eligible to be moved in *pro hac vice.*

The evidence showed that the Respondent had met with clients, provided legal advice, wrote demand letters and engaged in negotiations on behalf of his clients operating from his office in the District of Columbia. According to his testimony, the only restriction he perceived was that he could not appear in the District of Columbia courts without being moved in *pro hac vice* by local counsel.

Mr. Walker–Turner's attorney argued that at the time in question all of his work was done under the supervision of an attorney licensed to practice in the District of Columbia. Rule 49(c)(8) provides for limited duration supervision of D.C. Bar Member:

> Practicing law from a principal office located in the District of Columbia, while an active member in good standing of the highest court of a state or territory, under the direct supervision of an enrolled, active member of the District of Columbia Bar, for a one period not to exceed 360 days from the commencement of such practice, during pendency of a person's first application for admission to the District of Columbia Bar; *provided* that the practitioner has submitted the application of admission within ninety (90) days of commencing practice in the District of Colombia, that the District of Columbia Bar member takes responsibility for the quality of the work and complaints concerning the services, and gives notice to the

public of the member's supervision and the practitioner's bar status.

Mr. Walker–Turner had never applied for admission to the District of Columbia Bar, so this provision does not apply to his circumstance.

Rule 49(a) states "no person shall engage in the practice of law in the District of Columbia or in any matter hold out as authorized or competent to practice law in the District of Columbia unless enrolled as an active member of the District of Columbia bar, except as otherwise permitted by these rules." The Court has examined the rule and its exceptions and finds that none of the exceptions apply to the practice of law engaged in by the Respondent in the District of Columbia.

The Court finds by clear and convincing evidence that Respondent, John Wayne Walker–Turner, Sr., has violated Maryland Rule of Professional Conduct 5.5 by practicing law in the District of Columbia when he was not a member of that bar or authorized by any exceptions to do so.

## II.

Petitioner took no exception to Judge Weatherly's Findings and Conclusions. As a sanction, Petitioner recommended that we suspend Respondent for 90 days.

Respondent filed written exceptions with this Court. In his exceptions, he argues essentially that: (1) there was insufficient evidence to support Judge Weatherly's determination that, Ms. Barbara Greenfield aside, "he had met with [other] clients, provided legal advice, wrote demand letters, and engaged in negotiations on the behalf of his clients operating from his office in the District of Columbia;" (2) even if there was sufficient evidence to support a finding that he represented clients other than Ms. Greenfield in the District of Columbia (D.C.) office, it was not a violation of the District's prohibition regarding the unauthorized practice of law if those matters involved "Maryland cases and legal issues"; (3) as to Ms. Greenfield, his conduct did not violate D.C.'s unauthorized

practice of law prohibition because "he was under the supervision of a District of Columbia licensed attorney" at the time; and, (4) he did not hold himself out to clients as being authorized to practice law in D.C. Assuming this Court were to overrule his exceptions and not dismiss the complaint, Respondent offers a reprimand as the commensurate sanction for his misconduct.

## III.

Respondent's exceptions to Judge Weatherly's Findings and Conclusions that he met with, supplied legal advice to, wrote demand letters for, and engaged in negotiations on behalf of clients, other than Ms. Greenfield, in his various offices in the District of Columbia, are not relevant to the outcome of this proceeding. Petitioner charged Respondent with a violation of MRPC 5.5(a) only as to Ms. Greenfield. Whether the evidence adduced before Judge Weatherly adequately proved Respondent's representation of other, unidentified clients is neither here nor there for our present purpose.[2]

---

**2.** Were it relevant to our consideration of the charge made against Respondent, we would conclude that Judge Weatherly's Findings and Conclusions were supported by clear and convincing evidence in this regard. The requirement of clear and convincing evidence borne by Petitioner does not mean "unanswerable" or "conclusive" evidence. *Atty. Griev. Comm'n v. Mooney*, 359 Md. 56, 79, 753 A.2d 17, 29 (2000). "Whether evidence is clear and convincing requires weighing, comparing, testing, and judging its worth when considered in connection with all the facts and circumstances in evidence." *Id.*

Despite Respondent's less-than-forthcoming responses to interrogatories, questions in deposition, and examination at the hearing before Judge Weatherly, as well as his spotty professional record keeping and imprecise recollection, Petitioner was able to establish at the hearing that: (1) Respondent acknowledged conferring with a "few" clients in the D.C. offices he maintained during calendar years 2000 and 2001, though he professed to be unable to venture an exact or even estimated number; (2) Respondent conceded he "had a couple of matters that were in D.C.," which matters he hinted involved litigation, though he only identified one matter, a divorce case, for which he claimed to have been moved in *pro hac vice* by an attorney admitted in D.C.; and, (3) on cross-examination by his counsel, Respondent agreed that he handled a "couple" of D.C. matters referred to him by Rubin Collins, Esquire, an attorney admitted in D.C., under whose control and direction Respon-

The defense that Respondent did not commit unauthorized practice of law as to clients, other than Ms. Greenfield, because their matters involved "Maryland cases and legal issues" is likewise of no relevance to this case. Even if it were relevant, Respondent failed to adduce sufficient evidence, measured by the preponderance standard, to justify, let alone compel, Judge Weatherly to so find. The sole potentially relevant evidence available to be argued by Respondent regarding this defense is wholly inconclusive and unpersuasive.

During Petitioner's direct examination of Respondent before Judge Weatherly, the following exchange occurred:

Q: Okay. Now, today do you have any estimate, other than Ms. Greenfield, of how many other clients conferred with you in any of the offices you had in the District of Columbia?

A: If I was to give—I mean, approximately it's been a few, Mr. Hirschman,[3] but I can't tell you a number.

Q: Okay. And those few clients, regardless of the number, did they also pay you legal fees for some services?

A: Some did and some didn't.

Q: Okay. And did you have a written agreement, whether it's called an engagement agreement or a retainer agreement, with them?

A: Anyone that signed up with me, if they eventually decided to go with me, yeah, we had a retainer agreement.

Q: *Okay. And did those people, besides Mrs. Greenfield, have their legal problems in the District of Columbia?*

A: *No.*

Q: *They were all in Maryland?*

---

dent assertedly labored at the time. Because we conclude that Respondent's defenses to having represented more than Ms. Greenfield from his D.C. offices either are not supported on the record by a preponderance of the evidence or are unconvincing, we would conclude, were there a need to, that Judge Weatherly's Findings and Conclusions that Respondent performed legal services as an attorney for more than Ms. Greenfield in D.C. were supported by clear and convincing evidence.

**3.** Mr. Hirschman is Bar Counsel for Petitioner.

*A:   I had a couple of matters that were in D.C., but of course I had the pro hoc in on.*

Q:   Well, the ones in D.C., you mean if they went into litigation you had to have your admission moved pro hoc vice?

A:   Explain that to me.   What do you mean?

Q:   Okay. You just said that you had to be pro hoc.

A:   Right, on a couple of cases.

Q:   Okay. Well, does that mean somebody moved your admission so that you—

A:   Exactly, yes, sir.

Q:   And was that done?

A:   Yes, sir.

Q:   Are you sure?

A:   Positive.

Q:   And do you have the names of those cases?

A:   The first case I believe I was ever admitted to pro hoc vice while working with Mr. Smith was a divorce matter in the—Brown versus Brown.

(Emphasis added).

Respondent did not identify any further cases where he was admitted before a D.C. court *pro hac vice,* nor did he elaborate on which or how many people he saw in D.C. regarding exclusively Maryland legal matters.   No inference favorable to him may be drawn from his failure to answer directly Bar Counsel's question in that latter regard.

During cross-examination by his counsel, Respondent implied, but in a limited context, that he serviced another attorney's Maryland clients from one of the D.C. offices:

Q:   Could you tell the judge briefly whether you were practicing law as an independent person using the office at 714 G Street or whether you were working with Mr. Henry Smith or for Mr. Henry Smith?

A:   Your Honor, very—I mean, my history with Mr. Smith is I'm not going to get into it wasn't a good one, but for the

most part Mr. Smith is the one who, when I first came out who basically allowed me to work with him and he would refer me cases.

And of course he was the one—you know, *Maryland cases,* and, you know, I did the work, he looked it over, I signed it and that was that. I don't know if that answered your question.

(Emphasis added).

Finally, in a series of somewhat unresponsive answers during later cross-examination, Respondent stated:

Q: Okay. I believe in answer to Mr. Hirschman's questions as well you said—you were asked a question about an address which is 1449 Pennsylvania Avenue. Who was— who originally leased that office?

A: Henry Smith.

Q: Okay. Did you sign or were you invited to the signing of the lease at 1449 Pennsylvania Avenue, Southeast in Washington, D.C.?

A: No.

Q: Was it basically the same arrangement that you had with Mr. [Rubin] Collins for the office of 714 G Street that you had with—

A: *Yeah, I would do the Maryland work for Henry.*

(Emphasis added).

It is apparent that the foregoing does not establish, by any recognized standard of proof, the proposition that Respondent argues, i.e., *all* of the non-litigation clients, whether his or another attorney's, seen by him in the *various* D.C. offices involved only Maryland legal matters.

■ Respondent's defense of his representation of Ms. Greenfield in a matter concededly involving a District of Columbia legal matter is that supervision by an attorney admitted in D.C. (be it Mr. Collins or Mr. Smith) fits within an exception to the D.C. prohibition on the unauthorized practice of law. On this record, we find this argument unpersuasive and wrong as a matter of law. Rule 49 of the District of

Columbia Court of Appeals, effective 1 February 1998, provides, in pertinent part: [4]

### Rule 49.  *Unauthorized Practice of Law*

(a) *General Rule*

No person shall engage in the practice of law in the District of Columbia or in any manner hold out as authorized or competent to practice law in the District of Columbia unless enrolled as an active member of the District of Columbia Bar, except as otherwise permitted by these Rules.

(b) *Definitions*

The following definitions apply to the interpretation and application of this rule:

\* \* \* \* \*

(2) "Practice of Law" means the provision of professional legal advice or services where there is a client relationship of trust or reliance.  One is presumed to be practicing law when engaging in any of the following conduct on behalf of another.

\* \* \* \* \*

(B) Preparing or expressing legal opinions;

\* \* \* \* \*

(D) Preparing any claims, demands or pleadings of any kind, or any written documents containing legal argument or interpretation of law, for filing in any court, administrative agency or other tribunal;

---

4.  Respondent acknowledged never having read D.C. Rule 49 or its Maryland counterparts.  Such "knowledge" as he claimed to have gained regarding what constitutes the unauthorized practice of law he obtained, after the fact, from a telephone call to a "hot line" and conversations with "seasoned" attorneys admitted in D.C.

\* \* \* \* \*

(E) Providing advice or counsel as to how any of the activities described in sub-paragraph (A) through (D) might be done, or whether they were done, in accordance with applicable law;

\* \* \* \* \*

(3) "In the District of Columbia" means conduct in, or conduct from an office or location within, the District of Columbia, where the person's presence in the District of Columbia is not of incidental or occasional duration.

\* \* \* \*

(c) *Exceptions*

The following activity in the District of Columbia is excepted from the prohibitions of section (a) of this Rule, provided the person is not otherwise engaged in the practice of law or holding out as authorized or competent to practice law in the District of Columbia:

\* \* \* \* \*

(8) *Limited Duration Supervision By D.C. Bar Member.* Practicing law from a principal office located in the District of Columbia, while an active member in good standing of the highest court of a state or territory, under the direct supervision of an enrolled, active member of the District of Columbia Bar, for one period not to exceed 360 days from the commencement of such practice, during pendency of a person's first application for admission to the District of Columbia Bar, *provided* that the practitioner has submitted the application for admission within ninety (90) days of commencing practice in the District of Columbia, that the District of Columbia Bar member takes responsibility for the quality of the work and complaints concerning the services, and gives notice to the public of the member's supervision and the practitioner's bar status.

The Commentary to the Rule 49, as it pertains to subsection (c)(8), states in pertinent part:

Section (c)(8) is new. It is designed to provide a one-time grace period within which attorneys admitted in other jurisdictions who come to practice law in the District of Columbia as their principal office may continue to practice law under the active supervision of a member of the District of Columbia Bar, while they promptly pursue admission to the Bar. This section is intended, conversely, to make it clear that a person admitted to the bar of another jurisdiction may not come to the District of Columbia and practice law under the supervision of a member of the Bar indefinitely while waiting for the period for admission on waiver to be satisfied.

* * * * *

Neither this section, nor other sections of the Rule are intended to prohibit lawyers admitted and in good standing to the bars of other jurisdictions from providing professional services to their clients in the District of Columbia, where the principal offices of those lawyers are located elsewhere and their presence in the District is occasional and incidental to a practice located elsewhere.

With respect to Rules 5.1 through 5.3 of the Rules of Professional Conduct, the provisions of this rule are controlling over the conduct of a person performing the services of a lawyer where the elements of the practice of law are present, *i.e.*, where there is a client relationship of trust or reliance, or an indication of authority or competence to practice law in the District of Columbia. This means that, where either of those elements is present, a person may not participate indefinitely in the delivery of legal services as a lawyer under the supervision of a member of the District of Columbia Bar; he or she must become a member of the Bar within the period specified in this section.

As the record in the present case makes clear, Respondent took no steps to gain regular admission to the Bar of the

District of Columbia during the time he operated from his various D.C. offices. Further, he evinced no intent to seek such admission. Accordingly, even had Judge Weatherly (or we) assumed that Respondent's activities in D.C. involving Ms. Greenfield were supervised by one or more attorneys admitted to practice in D.C., his conduct patently did not come with the exception of subsection (c)(8) of Rule 49.[5] Respondent's exceptions are overruled.

## IV.

Turning to the sanction, as we most recently noted in *Atty. Griev. Comm'n v. Gallagher*, 371 Md. 673, 810 A.2d 996 (2002) , quoting *Atty. Griev. Comm'n v. Clark*, 363 Md. 169, 183–84, 767 A.2d 865, 873 (2001):

This Court is mindful that the purpose of the sanctions is to protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession. We have stated that '[t]he public is protected when sanctions are imposed that are commensurate with the nature and

---

**5.** It is unavailing that Respondent testified that he told clients that if a matter required litigation in the District of Columbia one of the other lawyers would have to handle it or Respondent moved in *pro hac vice* for the purposes of the client's case. Likewise, that Respondent may have disclaimed specifically on stationery letterhead or in conversation with clients that he was not admitted in D.C. is of no consequence to whether his rendition of legal advice and non-litigation representation otherwise constituted the unauthorized practice of law as explained in Rule 49 and its Commentary.

The Commentary pertinent to subsection (b)(2) of the Rule, defining the "practice of law," makes clear that a person performing any of the enumerated activities is presumed to "practice law," whether explicitly or implicitly giving the appearance of authority or competence to do so. Respondent's legal activities short of entering his appearance in a D.C. court nonetheless fell within the range of activities constituting the practice of law in D.C. That Respondent may not have stated affirmatively to non-litigation clients that he was admitted in D.C., or that his letterhead bore the initials "MD" after his name, do not establish that each client saw his letterhead or understood the ramifications of the initials. His rendering of advice conveyed the implicit representation of competence and authority to provide advice to Ms. Greenfield regarding her problem which involved D.C. law.

gravity of the violations and the intent with which they were committed.' Therefore, the appropriate sanction depends upon the facts and circumstances of each particular case, including consideration of any mitigating factors.

Op. at 713–14, 810 A.2d at 1020 (other citations omitted). In addition, we have stated that "[i]mposing a sanction protects the public interest 'because it demonstrates to members of the legal profession the type of conduct which will not be tolerated.'" *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 96, 753 A.2d 17, 38 (2000) (quoting *Attorney Grievance Comm'n v. Ober*, 350 Md. 616, 631–32, 714 A.2d 856, 864 (1998)) (citation omitted).

■ We typically consider a non-exclusive list of factors in arriving at the appropriate sanction:

[A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Atty. Griev. Comm'n v. Harris*, 366 Md. 376, 406, 784 A.2d 516, 533 (2001) (quoting *Attorney Grievance Comm'n v. Jaseb*, 364 Md. 464, 481–82, 773 A.2d 516, 526 (2001) (other citations omitted)).

We recently had occasion to consider the appropriateness of sanctions with regard to violations of MRPC 5.5(a) in *Atty. Griev. Comm'n v. Barneys*, 370 Md. 566, 805 A.2d 1040 (2002). In that case, we surveyed in some depth the more recent cases of this Court where the flagship violation was of MRPC 5.5(a). *Barneys*, 370 Md. at 579–588, 805 A.2d at 1047–52. In all but one of those cases (not including *Barneys* which ultimately followed form), the sanction was disbarment. In the present case, Petitioner does not seek disbarment, nor do the facts

warrant it. Moreover, in each of the cases discussed in *Barneys* where disbarment resulted, other violations exacerbated the situation; in Respondent's case, he has been found to have violated MRPC 5.5(a) only. Accordingly, we conclude that, for the purpose of identifying an appropriate and measured sanction in Respondent's case, we shall look primarily to *Atty. Griev. Comm'n v. Harris–Smith*, 356 Md. 72, 737 A.2d 567 (1999).

*Harris–Smith* presented the geographical reverse of Respondent's case. Harris–Smith was not admitted in Maryland (though she was admitted in Virginia, Pennsylvania, and the U.S. District Court for the District of Maryland). She was found to have practiced in Maryland, however, by her conduct in a practice with two attorneys admitted in Maryland, irrespective of her efforts to distinguish her practice as one restricted to federal bankruptcy matters under the blanket of her admission to the Maryland federal court.

As we analyzed *Harris–Smith* in *Barneys*, we observed:

Harris–Smith's role in the law firm was to "prescreen" (a term she used) prospective clients. When she determined that a client's matter involved bankruptcy law, she proceeded to represent the client without the supervision of a Maryland attorney. When representation in a State court was required, however, she would refer the client to one of the firm's other attorneys admitted in Maryland.

Based on this conduct, we nonetheless found that Harris–Smith violated MRPC 5.5(a). In doing so, we rejected her defense that she "pinpointed" bankruptcy cases and therefore limited herself to federal legal matters. As we explained in a parenthetical, the "unauthorized practice of law includes '[u]tilizing legal education, training, and experience ... [to apply] the special analysis of the profession to a client's problem.'" *Harris–Smith*, 356 Md. at 83, 737 A.2d at 573 (alteration in original) (quoting *Somuah v. Flachs*, 352 Md. 241, 262, 721 A.2d 680, 690 (1998)) (quoting *Kennedy v. The Bar Ass'n of Montgomery County*, 316 Md. 646, 662, 561 A.2d 200, 208 (1989)). In addition, we noted that

"[t]here is a danger that lawyers in the position in which Harris–Smith placed herself 'would be motivated to cant advice artificially in the safe direction,'" *Harris–Smith,* 356 Md. at 84, 737 A.2d at 573 (quoting C.W. Wolfram, *Sneaking Around in the Legal Profession: Interjurisdictional Unauthorized Practice by Transactional Lawyers,* 36 S. TEX. L. REV. 665, 698 (1995)), and that "the operation of the triage by the unadmitted attorney, from an office for the general practice of law in Maryland," might be "used 'as a shield behind which to conduct an unlimited-in-fact law practice.'" *Id.*

In our consideration of the appropriate sanction, we gauged the graveness of Harris–Smith's conduct against MRPC 8.4 generally and concluded that her conduct did not reach the level of a violation of MRPC 8.4(b) and (c), "both of which would be serious violations going to the attorney's integrity." *Harris–Smith,* 356 Md. at 90, 737 A.2d at 577. Reasoning that Harris–Smith's unauthorized practice of law "result[ed] from [her] attempt to practice within the limits of her admission to the bar of the federal district," we acknowledged that her "attempt was unsuccessful solely at the beginning of the process, when Harris–Smith analyzed the problems presented by those who sought her services and advised them how to proceed." *Id.* Therefore, taking into account the fact that Harris–Smith subsequently moved her office from Maryland to the District of Columbia, we found that a 30–day suspension was sufficient "to deter other unadmitted attorneys from undertaking a federal practice from an office in Maryland from which the non-admitted attorney would hold himself or herself out to the public as generally practicing law in order to identify cases that the attorney was authorized to handle." *Harris–Smith,* 356 Md. at 91, 737 A.2d at 577.

\* \* \* \* \*

We also found implicitly the facts of *Harris–Smith* to be more similar to situations where a violation of MRPC 5.5(b) had occurred, involving attorneys admitted to the Maryland

Bar who assist unadmitted lawyers or lay persons in the practice of law in Maryland. Thus, we explained that Harris–Smith's case, for purposes of the sanction, was analogous to *Attorney Grievance Comm'n v. Hallmon,* 343 Md. 390, 681 A.2d 510 (1996), where an attorney was suspended for 90 days for failing to maintain a trust account, failing to respond to Bar Counsel, and assisting a lay person in the unauthorized practice of law. *Harris–Smith,* 356 Md. at 92, 737 A.2d at 578.

*Barneys,* 370 Md. at 580–82, 805 A.2d at 1047–49. (Footnotes and some parentheticals omitted).

As in *Harris–Smith,* a 30 day suspension seems to us the appropriate sanction in the present case to underscore what attorneys are not to do and to deter future misconduct of this type. Respondent, following the conduct complained of, abandoned his D.C. office and now maintains an office in Maryland only. While practicing in D.C., he arguably made some efforts to conform his practice to what he understood (albeit an incorrect understanding) to be the limitations of his legal authorization to practice, i.e., having a D.C. attorney move his admission *pro hac vice* for litigation matters in the D.C. courts and denoting the letters "MD" after his name on firm stationery. While his general lack of cooperation with Bar Counsel is not worthy of praise, we are persuaded that his misstep with regard to Ms. Greenfield, brought to light in this case, was due largely to his inexperience and is not likely to repeat itself. A 30 day suspension seems commensurate with the lesson to be learned in this matter.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT; INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715(c), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST JOHN WAYNE WALKER–TURNER, SR.; RESPONDENT'S THIRTY DAY SUSPENSION

SHALL COMMENCE THIRTY DAYS FROM THE FIL-ING OF THIS OPINION.