51 A.3d 553

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

John Wayne WALKER–TURNER, Sr.

Misc. Docket AG No. 16, Sept. Term, 2011.

Court of Appeals of Maryland.

Aug. 22, 2012.

Raymond A. Hein, Deputy Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

J. Wyndal Gordon, Esquire, Baltimore, MD, for Respondent.

Argued before: BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

The Attorney Grievance Commission of Maryland, acting through Bar Counsel ("Petitioner"), filed a petition for disciplinary or remedial action, pursuant to Maryland Rule 16–751(a)(1),[1] against John Wayne Walker–Turner ("Walker–Turner"), a Maryland attorney with offices in Prince George's County. Petitioner charged that Walker–Turner's conduct representing clients Leslie's Limousine's Service ("Leslie") and Leslie Anderson individually ("Anderson"), the owner of the business, violated the following Maryland Lawyers' Rules of Professional Conduct (MLRPC): 1.1 (Competence);[2] 1.2(a) (Scope of Representation and Allocation of Authority Between Client and Lawyer);[3] 1.3 (Diligence);[4] 1.4(a) and (b) (Com-

---

**1.** Maryland Rule 16–751(a)(1) provides: "Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

**2.** Maryland Lawyers' Rule of Professional Conduct (MLRPC) 1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires legal knowledge, skill, thoroughness and preparation reasonably necessary for representation."

**3.** MLRPC 1.2(a) provides, in relevant part:
 [A] lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter.
 Bar Counsel withdrew the allegation that Walker–Turner violated MLRPC 1.2(a) during the evidentiary hearing on the Petition held on 10 January 2012.

munication);[5] and 8.4(a) and (d) (Misconduct).[6] Pursuant to Maryland Rules 16–752(a) and 16–757(c), we designated the Honorable Julia Weatherly of the Circuit Court for Prince George's County to conduct an evidentiary hearing and file written findings of fact and conclusions of law in this matter.

Judge Weatherly held such a hearing on 10 January 2012. Based on her assessment of the record (and according to the applicable standards of proof), she concluded that Walker–Turner violated MLRPC 1.1, 1.3, 1.4(a)(2) and (b), and 8.4(a) and (d). Walker–Turner filed exceptions to Judge Weatherly's findings and conclusions. For reasons we shall explain, we overrule Walker–Turner's exceptions and direct that he be suspended from the practice of law for a period of 60 days.

## I. BACKGROUND

### A. Judge Weatherly's Findings of Fact

On 19 September 2006, Walker–Turner entered his appearance on behalf of Leslie and Anderson in the District Court of Maryland, sitting in Prince's George's County, in the civil

---

**4.** MLRPC 1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

**5.** MLRPC 1.4 provides:
(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
(2) keep the client reasonably informed about the status of the matter;
(3) promptly comply with reasonable requests for information; and
(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the [MLRPC] or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**6.** MLRPC 8.4 provides, in relevant part: "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the [MLRPC], knowingly assist or induce another to do so, or to do so through the act of another; ... [or] (d) engage in conduct that is prejudicial to the administration of justice."

matter of *Yellow Book Sales & Distribution Company T/A Yellow Book USA v. Leslie's Limousine Service, Inc.* Yellow Book was seeking contractual damages against Walker–Turner's clients. The trial was set for 26 January 2007 at 8:45 a.m. in Upper Marlboro. Walker–Turner negotiated (although not face-to-face) with Yellow Book's attorney, Michael Botsaris, reaching in principle a settlement agreement the day before the scheduled trial. During the negotiation process, Walker–Turner was in communication with Anderson.

The terms of the settlement agreement, in principle, provided that Anderson and Leslie would pay Yellow Book $6,500 in two installments: $2,100 due on or before 31 January 2007 and $4,400 due on or before 26 April 2007. If Anderson and Leslie did not make payments according to the terms of the agreement, Yellow Book would be entitled to a consent judgment for the full amount requested in the original Statement of Claim, which exceeded the settlement amount. Botsaris, who apparently Walker–Turner had not met face-to-face previously, reduced the agreement to writing and faxed a signed copy to Walker–Turner's office at 5:10 p.m. the night before the scheduled trial. In turn, Walker–Turner requested that Anderson come to his office and sign the written settlement agreement that evening and told him that he did not need to appear in court the next day if he signed the agreement. Anderson was not available that evening, but indicated that he would come to Walker–Turner's office for that purpose before 8:00 a.m. the next day. At 8:30 a.m. on the day of the trial, Anderson had not arrived at the law office so Walker–Turner drove to the courthouse.

On his way to the courthouse, Walker–Turner attempted unsuccessfully to contact Anderson via cell phone and also looked for him in the District Court wing of the courthouse when he arrived. Walker–Turner looked in the courtroom where the case was scheduled to be tried, but found no judge on the bench. He did not check-in with the courtroom clerk, however, to determine where the *Yellow Book* case was on the docket or when it might be called. After leaving the courtroom, Walker–Turner called Anderson again on his cell phone

from the courthouse hallway and reached him. Anderson told Walker–Turner that he was at Walker–Turner's law office, where he had executed the written agreement and left a check for the first payment of $2,200.[7]

Walker–Turner encountered a person, later learned to be Botsaris, in the hallway outside the courtroom as Botsaris exited the courtroom. Walker–Turner inquired whether the *Yellow Book* case had been called yet. He did not introduce himself to Botsaris. Botsaris informed him that the case had been called and concluded. Introductions took place and Walker–Turner informed Botsaris that Anderson had signed the settlement agreement. He asked Botsaris whether "everything was still in place," to which Botsaris responded "Yes, just get me the documents." Walker–Turner did not ask Botsaris, the District Court courtroom clerk or any other District Court clerical staff about the disposition of the case in the courtroom. Botsaris did not volunteer to Walker–Turner that when the *Yellow Book* case was called, he had requested and obtained a default affidavit judgment against Anderson and Leslie for $7,827.23, plus $2,694.28 in pre-judgment interest, $90.00 in costs, and $2,582.00 in attorneys fees.[8] Walker–

---

7. As noted earlier in this opinion, the apparent settlement required Anderson to pay Yellow Book $6,500 in two installments: a first payment of $2,100 and a second payment of $4,400. Anderson accompanied his execution of the written settlement agreement with a check for $2,200 and, thus, his final check was for $4,300. Anderson paid Yellow Book a total of $6,500 ultimately.

8. At the evidentiary hearing before Judge Weatherly, Botsaris testified that he did not encounter Walker–Turner in the hallway after the trial. When asked if he had met Walker–Turner prior to the trial he responded, "Personally, face to face, I couldn't tell you for sure. I believe we had other cases together over the years that I've practiced, but I don't recall personally meeting him." Instead, Botsaris testified that the two had a phone conversation the afternoon of the trial date, describing the conversation as "He asked me what happened at trial today. I told him that neither he nor his client showed up. He said that he did not have the money from his client and he did not have the signed stipulation, but that he was hopeful to get it to me very quickly. And I agreed that if he did get it to me, that I would consent to any motion that he would file to vacate the judgement that had been entered that morning."

Turner, unmindful of the judgment, returned to his office, counter-signed the written agreement, and claimed to mail it that day, along with Anderson's check, to Botsaris.

On 30 January 2007, the Clerk of the District Court mailed a copy of the Notice of Affidavit Judgment (consistent with the details that Botsaris neglected to tell Walker–Turner on 26 January) to Walker–Turner and Botsaris. Walker–Turner told Judge Weatherly that he did not receive a copy of the notice and still did not know, as of that time, of the judgment entered against his client.

On 7 March 2007, Anderson received a Request for Oral Examination (as to assets) in the *Yellow Book* case, filed by Botsaris, who was attempting to collect on the judgment. Anderson called Walker–Turner, who said he was surprised and would look into the matter. Walker–Turner contacted Botsaris by telephone later that day to find out why he was attempting to collect on a judgment, in light of the partially-consummated settlement. After speaking with Walker–Turner, Botsaris agreed to authorize the filing of a Consent Motion to Vacate the Judgment. Botsaris testified that, prior to Walker–Turner's phone call, he was not aware whether he had received the signed settlement agreement or check. The record reflects that the check was deposited by Botsaris's law firm on 12 March 2007. Botsaris testified that the reason he was unable to confirm that the agreement and Anderson's check had been received prior to Walker–Turner's phone call

---

Walker–Turner testified to a different version of the attorneys' interaction on the day of trial. After ending his cell phone call with Anderson from the courtroom hallway, "a gentleman comes out of the courtroom, I asked was a judge on the bench? He said, yeah, I said, by chance did they call—did you happen to hear the Yellow Book case? He said, yeah, I'm here on Yellow Book, I'm Mike Botsaris." Walker–Turner introduced himself and "asked him, is everything still in place? He said, yeah, just—you know, everything's in place. I had told him that the—Mr. Anderson was at my office—had been at my office, had signed the settlement agreement and I would get it right to him."

Judge Weatherly's findings of fact confirmed Walker–Turner's version of the events following the trial and our recitation of the encounter reflects her determination of the more credible testimony as she saw it to be.

was because of the large volume of collection work conducted by his law firm.

Meanwhile, on 8 March 2007, Walker–Turner filed in the *Yellow Book* case a Consent Motion to Vacate the Judgment, stating as the sole ground for relief sought that a settlement agreement was reached between the parties.[9] The motion was denied by a simple order on 12 March 2007. The District Court mailed copies of the order denying the motion to Walker–Turner and Botsaris. Walker–Turner testified before Judge Weatherly that he did not receive the copy of the order denying the motion to vacate that was mailed to him.[10]

On 26 April 2007, Walker–Turner mailed to Botsaris Anderson's second and final payment under the settlement agreement, with a letter requesting that Botsaris send a letter to credit bureaus stating that the debt to Yellow Book was paid. Walker–Turner later mailed separately to Botsaris, for his review, a Motion for Reconsideration of the previously denied Motion to Vacate Default Judgment. This motion asked also that the case be entered as settled as of 21 May 2007. The reconsideration motion, for the first time in that case, included a detailed explanation for Anderson's failure to appear for the 26 January 2007 trial and a statement that Anderson was hindered by the judgment against him. Upon receipt of the draft motion, Botsaris entered a notation to dismiss the scheduled oral examination of Anderson and also filed a Line of Satisfaction in the District Court. Walker–Turner testified that he felt the case was over at that point and that he could do nothing more for Anderson. Therefore, he did not file the motion for reconsideration or pursue otherwise clearing the judgment from Anderson's or Leslie's credit record.

---

**9.** The motion was filed more than 30 days after the judgment had been entered.

**10.** The record does not reflect that Walker–Turner changed the location or address of his law office during the relevant times in this matter, or that the notice was misaddressed.

Unremarkably, the judgment found its way onto Anderson's credit record and, as a result, he encountered problems refinancing his home. Anderson testified that he also believed that he was turned down for a security job, which required a credit check during the security clearance, because of the judgment. Anderson obtained subsequently a job with the U.S. Marshal's Office; however, the judgment remains on his credit record. Based on this evidentiary record, Judge Weatherly found, by clear and convincing evidence, that Walker–Turner violated MLRPC 1.1, 1.3, 1.4(a)(2), 1.4(b), 8.4(a), and 8.4(d).

## B. Walker–Turner's Exceptions

The thrust of Walker–Turner's exceptions seeks to re-direct our analytical focus from his own alleged misconduct to how Botsaris misled him. Indeed, Walker–Turner alleges that Botsaris violated MLRPC 3.3, 3.4, 4.1, and 8.4 by not informing the District Court of the terms of the settlement in principle reached the night before 26 January 2007 and by not requesting the case be passed until Walker–Turner arrived. Walker–Turner alleges further that Botsaris misled him intentionally as to the outcome of the case in the courtroom when he responded affirmatively to Walker–Turner's question as to whether "everything is still in place." As to Judge Weatherly's conclusion that Walker–Turner violated MLRPC 1.1 (Competence), he admits generally that failure to appear for a trial without an acceptable explanation constitutes incompetent representation. He argues, however, that he was not *"per se "* absent from the trial because he was outside the courtroom on a cell phone with his client when the case was called apparently. Additionally, he argues that there never should have been an affidavit judgment entered because his clients and Yellow Book reached a settlement the night before and he should have been able to rely reasonably on Botsaris to represent to the District Court judge that the case was settled.

Walker–Turner takes exception also with the hearing judge's conclusion that he violated MLRPC 1.3 (Diligence)

when he failed to appear for the trial; check the court docket; or, make his presence in the vicinity known to the courtroom clerk or Botsaris. Judge Weatherly concluded that, because Walker–Turner had not provided Botsaris with the signed agreement and was not present for the trial, he (Walker–Turner) should have assumed reasonably that adverse action was taken against his clients. Walker–Turner again falls back on what he calls Botsaris's "double-crossing" actions to excuse why he was not present when the case was called for trial and why he did not confirm what happened in the courtroom in his absence.

Walker–Turner objects also to Judge Weatherly's conclusion that he violated MLRPC 1.4(a)(2) and (b) (Communication) by failing to inform timely Anderson that a judgment was entered against him. He disputes the hearing judge's finding that he did not pursue acquiring information as to the formal disposition of the docket call that he missed, again relying on his brief exchange with Botsaris in the courtroom hallway afterwards. Walker–Turner maintains that his lack of awareness of the judgment entered against his client should absolve him of his failure to inform timely Anderson. Based on his prior record of communicating with Anderson regarding the settlement negotiations in the *Yellow Book* case, Walker–Turner maintains that the reasonable supporting inference should be that, had he known of the judgment, he would have communicated that result to his client.

Based upon his exceptions to the hearing judge's findings and conclusions as to the MLRPC 1.1, 1.3, and 1.4 charges, Walker–Turner submits that he should not be found to have violated MLRPC 8.4(a). He reiterates that there was not supposed to be a trial, as he and Botsaris reached a settlement agreement for their clients the night before; thus, the cascade of negative consequences to his clients from his failure to be present in the courtroom when the case was called for trial or to follow-up promptly afterwards to confirm what happened actually should not constitute violations of the MLRPC.

As to MLRPC 8.4(d), Walker–Turner insists that as soon as he learned about the judgment against his clients, he worked assiduously to rectify the situation. He disagrees also with the hearing judge's finding that his Motion to Reconsider was denied as defective because it lacked an explanation of good cause and was filed untimely, noting that the order of the District Court stated simply "Denied," without elaboration as to why that action was taken. Thus, Walker–Turner reasons, there was no clear and convincing evidence that his motion was inadequate in any respect. Walker–Turner argues also that, once apprised of his clients' predicament, he resolved the issue within 120 days and made sure his clients' payments on the settlement agreement were timely and that he received a Line of Satisfaction in return.

## II. STANDARD OF REVIEW

This Court has original and complete jurisdiction over matters of attorney discipline. *Att'y Griev. Comm'n v. Thomas,* 409 Md. 121, 147, 973 A.2d 185, 200 (2009). Maryland Rule 16–757(b) requires that, at the evidentiary hearing, Bar Counsel prove, by clear and convincing evidence, the charges leveled against the attorney. The hearing judge's proposed findings of facts are accepted by this Court, unless they are erroneous clearly. *Att'y Griev. Comm'n v. Guida,* 391 Md. 33, 50, 891 A.2d 1085, 1095 (2006). This deferential standard of review is in place because the hearing judge is in the best position to assess the credibility of witnesses and parties. *Id.; see also* Md. Rule 16–759(b)(2)(B). We review the hearing judge's conclusions of law, however, under a non-deferential standard. *Att'y Griev. Comm'n v. Ugwuonye,* 405 Md. 351, 368, 952 A.2d 226, 236 (2008).

## III. DISCUSSION

### A. MLRPC 1.1

MLRPC 1.1 requires that an attorney provide competent representation to his/her client. Failure to appear for a trial, absent an acceptable explanation, constitutes incompe-

tent representation. *See Att'y Griev. Comm'n v. De La Paz,* 418 Md. 534, 553, 16 A.3d 181, 192 (2011) (finding a violation of MLRPC 1.1 where the attorney did not enter his appearance on behalf of the client and did not attend the hearing); *Att'y Griev. Comm'n v. Tinsky,* 377 Md. 646, 652, 835 A.2d 542, 545 (2003) (concluding that the attorney's failure to appear at two criminal proceedings was incompetent and showed a lack of diligence); *Att'y Griev. Comm'n v. Harris,* 366 Md. 376, 403, 784 A.2d 516, 531 (2001) (finding a violation of MLRPC 1.1 where an attorney missed two criminal proceedings without a sufficient explanation).

■ There is no dispute that Walker–Turner failed to appear in court on behalf of his clients at the 26 January 2007 trial. Walker–Turner offers, as his explanation, that the parties reached a settlement on the night before trial and, thus, there should have been no trial requiring his attendance. This does not explain, however, his failure to check-in with the courtroom clerk when he entered the courtroom initially or to locate Botsaris, knowing that he had not provided yet Botsaris with a signed copy of the agreement. After he was told by Botsaris that his clients' case had been called, he did not inquire of anyone as to the actual court disposition of the matter. Walker–Turner, instead, inquired only of Botsaris whether "everything was still in place" (referring to the oral settlement agreement), to which Botsaris responded affirmatively. Our opinion in this case should not be read as minimizing our strong encouragement of collegiality and professionalism among lawyers in their dealings with each other; however, depending on circumstances, reliance on an ambiguous response to an unduly limited inquiry cannot be a substitute for the basic due diligence that forms a part of the competent practice of law. In the circumstances surrounding Walker–Turner's misguided and perfunctory question put to Botsaris and his failure to seek promptly from the District Court confirmation of what happened in the courtroom in his absence (and thus discover timely that a judgment had been entered against his clients), his representation of his clients was incompetent.

 A failure to file a necessary appeal or revisory motion within the allowable time period may constitute incompetence in the practice of law as well. *Att'y Griev. Comm'n v. Byrd,* 408 Md. 449, 458, 478, 970 A.2d 870, 875, 887 (2009) (concluding that where an attorney filed a motion to vacate a judgment and a subsequent motion for reconsideration, both of which were denied, but failed to file timely an appeal of these denials, constituted a violation of MLRPC 1.1); *Att'y Griev. Comm'n v. Awuah,* 374 Md. 505, 522, 823 A.2d 651, 661 (2003) (concluding that a failure to file an appeal and/or motion to reconsider within the requisite time period for a client's immigration matter violated MLRPC 1.1).

Although Walker–Turner asserts that he did not receive the 30 January 2007 written notice from the District Court as to the 26 January 2007 entry of judgment against his clients, he waited longer than the 30-day period, after which the judgment became enrolled, in which to file a motion for reconsideration. *See* Md. Rule 3–534 (giving any party 10 days after entry of a judgment to file a motion to alter or amend a judgment in District Court matters) & 3–535 (giving any party 30 days after entry of a judgment to request the court to exercise its revisory power and alter or amend a judgment in District Court matters). Walker–Turner did not file a motion to vacate until 8 March 2007 (the day after Anderson received from Botsaris the request for oral examination). At this point, the motion was untimely and, to boot, offered no adequate explanation for why untimeliness should be excused. Had Walker–Turner acted earlier to confirm what happened in the courtroom when the case was called and he was not present on 26 January 2007, he and his clients would have been spared the consequences that followed. Why the motion to vacate was denied by the District Court is apparent, and without need for elaboration. We conclude that Walker–Turner's failure to appear or timely file a proper revisory motion constitutes a violation of MLRPC 1.1. His exceptions are overruled.

## B. MLRPC 1.3

MLRPC 1.3 requires that lawyers "act with reasonable diligence and promptness in representing a client." In addition to constituting a violation of MLRPC 1.1, an attorney violates MLRPC 1.3 when he/she fails to appear at a trial and fails to file timely an appeal or revisory motion to protect a client. *Byrd,* 408 Md. at 458, 478, 970 A.2d at 875, 887; *Awuah,* 374 Md. at 516, 823 A.2d at 658; *Tinsky,* 377 Md. at 652, 835 A.2d at 545. Even a single, inadvertent failure to appear at a hearing may constitute actionable neglect of a legal matter. *Att'y Griev. Comm'n v. Ficker,* 319 Md. 305, 313, 572 A.2d 501, 505 (1990). In *Ficker,* an attorney failed inadvertently to appear at a client's trial on a charge of driving while intoxicated because the attorney failed to enter the date on his calendar. *Ficker,* 319 Md. at 308–09, 572 A.2d at 502. Ficker argued that, based on an American Bar Association ("ABA") informal ethics opinion issued in 1973, his single inadvertent failure to appear for trial could not constitute sanctionable neglect. *Ficker,* 319 Md. at 311, 572 A.2d at 504. This Court, however, disagreed with Ficker and the ABA, maintaining Maryland's position that a single failure to appear, even if inadvertent or not associated with a pattern of irresponsibility, is actionable neglect. *Id.* (citing *Att'y Griev. Comm'n v. Myers,* 302 Md. 571, 579, 490 A.2d 231, 235 (1985)); *Att'y Griev. Comm'n v. Montgomery,* 296 Md. 113, 119, 460 A.2d 597, 600 (1983). As discussed *supra,* Walker–Turner did not appear at his client's trial and did not provide an excuse we are prepared to accept for his failure to check-in with the courtroom clerk before departing the courtroom or to locate opposing counsel. These actions show a lack of diligence in his representation of his clients and, thus, violate MLRPC 1.3.

Walker–Turner violated MLRPC 1.3 also by failing to ascertain the status of his clients' case after he missed the trial. He explains that he did follow-up as to what happened in the courtroom by asking Botsaris whether their settlement was "still on." Botsaris's reply, "Yes, just get me the papers," does not excuse, in our estimation, Walker–Turner from investigating and confirming the official outcome of the hearing in

the District Court or asking Botsaris a direct, rather than rhetorical, question about the courtroom disposition of the matter. We agree with Judge Weatherly's finding that Walker–Turner, an experienced trial attorney, should have considered reasonably that negative action may have been taken against his clients when he failed to provide Botsaris with a signed settlement agreement before the trial, failed to find and inform Botsaris or the courtroom clerk of his presence in the courthouse, failed to answer the docket call, and failed to appear for trial. Although Walker–Turner emphasized his prior good (albeit impersonal) working relationship with Botsaris before the 26 January 2007 trial, such does not excuse his blind reliance on a vague reply from opposing counsel (who he only met in person after the hearing was concluded) in reply to a less than comprehensive question.

Walker–Turner argues strenuously that the *Yellow Book* case "should not have gone to trial" and that "there should not have been [a trial]" because the parties entered into a settlement agreement on the prior evening. This argument gains no traction with this Court. Although the attorneys may have agreed to terms of a settlement on 25 January 2007, Walker–Turner and his clients had not delivered a signed copy of the agreement to Botsaris, nor had Walker–Turner communicated with Botsaris during the morning of the 26th, before the case was called. It is unreasonable, under these circumstances, for Walker–Turner to blame on his opposing counsel his negligent failure to communicate or appear for trial. Walker–Turner could have ameliorated the problems he caused for his clients with a brief inquiry of the courtroom clerk on the day of the trial, but he failed to do so. Simply put, half-measures and good intentions will not satisfy an attorney's professional and ethical obligations.

The time lapse between the 26 January 2007 trial date and Walker–Turner's eventual filing of a motion to vacate shows a lack of promptness in pursuit of protecting his client's interest. A copy of the judgment was mailed by the District Court to Walker–Turner on 30 January 2007. Walker–Turner claims to have not received the notice. After he was "surprised" by a

call from his client about Botsaris's effort to collect on a judgment, Walker–Turner filed a tardy motion to vacate that lacked a sufficient justification for why the judgment should be vacated. The motion stated that "the defendant was not present for this matter was to be settled," and that "*since* the trial date and entry of default, the parties have entered into a settlement agreement of all matters of issue." (Emphasis added.) Motions must be accompanied by an articulation of the grounds supporting the relief sought, set forth with particularity. Md. Rule 3–111(c) (governing motions filed in the District Court). The motion filed by Walker–Turner was untimely and failed to set forth an adequate explanation as to why his clients failed to appear at the trial, that Walker–Turner himself just stepped out of the courtroom to call Anderson, or that the case was settled the night before trial. Walker–Turner's failure to appeal or file timely a cogent motion to vacate constitutes violations of MLRPC 1.3. His exceptions are overruled.

### C. MLRPC 1.4

An attorney is required to keep his/her client informed reasonably as to the status of a matter undertaken by the attorney. MLRPC 1.4(a)(2). The attorney must explain the matter to the extent reasonably necessary to allow the client to make informed decisions about the course of the representation. MLRPC 1.4(b). Walker–Turner did not inform timely Anderson that a judgment was entered against him and Leslie because of his failure to appear at the trial or ascertain the actual disposition of the case. Because of the failed communication, Anderson was not able to make informed decisions as to the best course to correct Walker–Turner's earlier failures. Walker–Turner's self-inflicted period of oblivion as to the existence of the judgment is the reason for his failure to communicate properly with his clients. *See Att'y Griev. Comm'n v. Fox,* 417 Md. 504, 517, 11 A.3d 762, 769 (2010) (finding an attorney violated MLRPC 1.4 when he did not know that the client's case was dismissed and, thus, did not communicate properly with the client). We conclude

that Walker–Turner violated MLRPC 1.4. His exceptions are overruled.

### D. MLRPC 8.4(a) & (d)

When an attorney violates several of the MLRPC, he/she violates necessarily MLRPC 8.4(a). *Att'y Griev. Comm'n v. Foltz*, 411 Md. 359, 411, 983 A.2d 434, 465 (2009). Because we concluded *supra*, that Walker–Turner violated MLRPC 1.1, 1.3, and 1.4(a)(2) & (b), we conclude also that he violated 8.4(a).

MLRPC 8.4(d) prohibits attorneys from engaging in conduct prejudicial to the administration of justice. An attorney's failure to appear at a trial constitutes conduct prejudicial to the administration of justice because

> an attorney plays such an integral role in the judicial process that without his presence the wheels of justice must, necessarily, grind to a halt. The attorney's absence from the courtroom is immediately cognizable by the judge and intrudes upon the operation and dignity of the court.

*Ficker*, 319 Md. at 315, 572 A.2d at 506 (internal quotations omitted) (citing *Murphy v. State*, 46 Md.App. 138, 146, 416 A.2d 748, 753 (1980)). Walker–Turner's failure to appear at the 26 January 2007 trial, to check-in with the courtroom clerk or opposing counsel, or to follow-up regarding what happened to the case in his absence in the courtroom when the case was called resulted in a judgment being entered against his clients, despite that apparently a settlement agreement in principle was reached the night before trial. We agree with Judge Weatherly's finding that Walker–Turner violated MLRPC 8.4(d). His exceptions are overruled.

### IV. SANCTION

Petitioner recommends that Walker–Turner be suspended from the practice of law for six months. This recommendation was based on the violations of the MLRPC at issue in this case, as well as Walker–Turner's receipt of sanctions for previous professional misconduct. In 2002, we imposed on

Walker–Turner a 30–day suspension for the unauthorized practice of law, a violation of MLRPC 5.5(a). *Att'y Griev. Comm'n v. Walker–Turner,* 372 Md. 85, 812 A.2d 260 (2002). In 2006, the Attorney Grievance Commission issued to Walker–Turner a reprimand for violations of Maryland Rules of Professional Conduct [11] 1.1, 1.3, and 1.4 in connection with his representation of a client in a personal injury case. Walker–Turner was reprimanded again by the Attorney Grievance Commission in 2007 for violations of MLRPC 1.2, 1.3, 1.4, 1.16(d) (Declining or Terminating Representation), and 8.4(d). This reprimand was for failing to appear at a court hearing and his failure to communicate properly with his client. Walker–Turner would like a reprimand in the present case, if it is not dismissed outright.

In imposing sanctions in attorney discipline matters, "our aim is to protect the public and the public's confidence in the legal profession rather than to punish the attorney ... [and] to deter other lawyers from violating the" MLRPC. *Att'y Griev. Comm'n v. Taylor,* 405 Md. 697, 720, 955 A.2d 755, 768 (2008). We evaluate the facts and circumstances of each case to ensure that the attorney's sanction is commensurate with the gravity and intent of the misconduct. *Att'y Griev. Comm'n v. Ruddy,* 411 Md. 30, 76–77, 981 A.2d 637, 664 (2009). We have looked often to the ABA's standards for attorney sanctions which pose four rhetorical questions as an analytical template: "(1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating circumstances?" *Id.* (quoting *Taylor,* 405 Md. at 721, 955 A.2d at 769).

Although Judge Weatherly did not enumerate explicitly any findings relating to mitigation, we have said that, where shown by a preponderance of the evidence, "inadvertence, lack of a

---

**11.** On 1 July 2005, this Court adopted changes to the Maryland Rules that altered the title from "Maryland Rules of Professional Conduct" to "Maryland Lawyers' Rules of Professional Conduct."

persistent pattern of conduct, lack of prejudice to the client, and other such matters more properly pertain to mitigation of any sanction, rather than the fact of violation." *Ficker,* 319 Md. at 313, 572 A.2d at 505 (citing *Md. State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975) (internal quotation omitted)). The hearing judge did conclude that Walker–Turner's failure to appear at the 26 January 2007 trial was inadvertent, but that this failure (and its ramifications) could have been prevented by checking-in with the courtroom clerk or Botsaris before the case was called and "tried." On the other hand, we note that Walker–Turner has received letters of reprimand from the Attorney Grievance Commission previously for failing to appear at a trial. Walker–Turner's tendency to fail to appear for trials suggests an uncorrected pattern that aggravates the present case. Also, we do not ignore the harm (or potential harm) suffered by Anderson, e.g., a civil monetary judgment was entered on his credit record, with attendant consequences affecting a loan application and possibly a job application.

It is true that Walker–Turner worked with Botsaris in an attempt to cure the consequences of the entry of the judgment. The judgment appeared on Anderson's credit report nonetheless and impaired his ability to refinance his house. It appears still on his credit history (according to Anderson's testimony), even though he made his payments to Yellow Book timely pursuant to the settlement agreement. Anderson applied for a job requiring a security clearance (that included a credit check), and he believed that he was not hired for that job because of the judgment that appeared on his credit report. Walker–Turner is a solo practitioner with over ten years of experience. He is to be praised for being active in local legal and community organizations, as well as offering pro bono representation.

■ Because Walker–Turner has served already a 30–day suspension and the nature of his repeated similar violations suggests that more incentive is required to protect the public, a stronger sanction is warranted here. Recently, we imposed

a 60–day suspension on an attorney who violated MLRPC 1.1, 1.2, 1.3, 1.4, 1.8(h), 3.4(c), 4.2, 8.1, and 8.4, considering that his violations were repeat offenses following an earlier 30–day suspension. *Att'y Griev. Comm'n v. Butler,* 426 Md. 522, 539, 44 A.3d 1022, 1032 (2012). An appropriate sanction in the present case is a 60–day suspension.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THIS COURT PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOHN WAYNE WALKER–TURNER.**