44 A.3d 1022

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Anthony Ignatius BUTLER, Jr.

Misc. Docket AG No. 14, Sept. Term, 2011.

Court of Appeals of Maryland.

May 21, 2012.

524

James N. Gaither, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Kimberly M. Thomas, Esquire of the Law Offices of Kimberly M. Thomas, LLC, Baltimore, MD, for respondent.

BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

McDONALD, J.

The Attorney Grievance Commission ("Commission") charged Anthony I. Butler with violating several provisions of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), including MLRPC 1.1 (competence); 1.2 (scope of representation and allocation of authority between the lawyer and client); 1.3 (diligence); 1.4 (communication); 1.8(h) (conflict of interest); 3.4(c) (knowing violation of obligation under rule of tribunal); 4.2 (communication with person represented by counsel); 8.1 (false statement of material fact in disciplinary proceeding); and 8.4 (misconduct). Pursuant to Maryland Rule 16–752, the matter was referred to Judge Stephen J. Sfekas of the Circuit Court for Baltimore City to conduct a hearing and to provide findings of fact and recommended conclusions of law.

Judge Sfekas made various findings of fact and concluded that Mr. Butler failed to provide competent and diligent

representation, inadequately communicated with clients, had a conflict of interest in obtaining a release of liability from his client, and committed misconduct prejudicial to the administration of justice. He concluded that there was not clear and convincing evidence to support the remaining allegations. No exceptions were filed to Judge Sfekas' findings of fact; the Commission, however, excepted to several of the conclusions of law. We heard oral argument on those exceptions and on the appropriate sanction on March 6, 2012. For the reasons stated below, we overrule all but one of the Commission's exceptions, hold that Mr. Butler committed the violations found by Judge Sfekas, and direct that Mr. Butler be suspended from the practice of law for a period of 60 days.

## Background [1]

Mr. Butler was admitted to the Maryland Bar in January 2003. He has also been admitted to practice before the United States District Court for the District of Maryland. After a period in which he served as in-house counsel for a consulting firm, Mr. Butler began a solo practice focused on employment law. Within the three years preceding this action, Mr. Butler was disciplined on several occasions, including two appearances before this Court, and received two reprimands and a 30–day suspension for multiple violations of the disciplinary rules. *See Attorney Grievance Comm'n v. Butler,* 419 Md. 626, 20 A.3d 103 (2011); *Attorney Grievance Comm'n v. Butler,* 406 Md. 576, 960 A.2d 627 (2008).

The alleged violations in the current action stem from his representation of Ferguson Towing, Inc. ("FTI") and its owners, Freda Ferguson ("Mrs. Ferguson") and Keith Ferguson ("Mr. Ferguson"), in litigation beginning in March 2009. In particular, the allegations are based on Mr. Butler's failure to

---

1. These facts are derived from Judge Sfekas' findings of fact and the stipulated facts and documents submitted by the parties. No exceptions have been filed as to the findings of fact, and we accept the hearing judge's findings of fact as established for the purposes of this proceeding. *See* Maryland Rule 16–759(b)(2).

appear for two trial dates in that case and on his successful effort to have the Fergusons execute a "Settlement Agreement and Release" of claims against him upon termination of that representation.

*The November 2, 2009, Trial Date*

FTI was a defendant in a tort action in the District Court of Maryland, sitting in Baltimore City, arising out of an automobile accident involving one of their employees. GEICO, the insurance company and subrogee of the accident victim, was the plaintiff in that case.[2] FTI's defense was that the employee was acting outside the scope of his employment at the time of the accident and that the Fergusons had been unaware of the accident. Trial was set for November 2, 2009. On November 1, Mr. Butler, on behalf of another client in a criminal case in the District Court of Maryland, sitting in Baltimore County, requested a jury trial. The case was immediately transferred to the Circuit Court for Baltimore County and, apparently in accordance with standard practice in that jurisdiction, scheduled for a jury trial the next day— November 2, 2009. As a result, Mr. Butler was scheduled to appear on November 2 before both the District Court in Baltimore City and the Circuit Court in Baltimore County.

Mr. Butler anticipated that the criminal matter would be resolved quickly, and so planned to handle both cases as scheduled. He believed that he could appear first for the criminal case in the Circuit Court for Baltimore County and would have sufficient time to travel to the District Court in Baltimore City for the Fergusons' trial. According to Mr. Butler, on November 1, he called and left a message for GEICO's attorney and also called the Fergusons to advise them of the scheduling conflict and his plan for dealing with it. However, according to the Fergusons, they were not told of his scheduling conflict prior to the November 2 trial date.[3]

---

**2.** *GEICO v. Pedro Rollins, Jr. and Ferguson Towing Co.,* Case No. CV–0101–4400–2009.

**3.** According to Mr. Butler, he could not document these calls because the phone service for his office did not itemize them.

On the morning of November 2, Mr. Butler called the Fergusons and the District Court clerk's office, and asked to have the FTI case placed at the end of the docket.[4] His effort to accommodate both cases ultimately failed as the criminal case in Baltimore County did not finish as quickly as he expected. By the time Mr. Butler arrived at the District Court in Baltimore City—approximately 10:45 a.m.—that court had completed its docket and the FTI case had been called and postponed.

While the Fergusons had been waiting for Mr. Butler to arrive, they had a conversation with GEICO's counsel. According to Mrs. Ferguson, GEICO's counsel told her that the insurance company would drop FTI as a defendant if the Fergusons proffered to the court, with Mr. Butler present, that they had been unaware that the accident had occurred.[5] Mrs. Ferguson thus believed that FTI's involvement in the case could be concluded at the next court proceeding.

At some time after the November 2 postponement, Mrs. Ferguson received notice from the District Court that the new trial date would be Friday, February 5, 2010. According to Mr. Butler, he did not receive a notice from the court and was thus unaware of the new trial date until he spoke with Mrs. Ferguson shortly before that date.

*The February 5, 2010, Trial Date*

Early in the week of February 1, Mrs. Ferguson contacted Mr. Butler. When Mrs. Ferguson informed him that the trial was set for that Friday, Mr. Butler told her that he would be in Orlando, Florida, for an American Bar Association ("ABA")

---

4. Mr. Butler's call to the District Court was memorialized by the clerk's office. He also produced a log from his cell phone to show that he had made a call to the Fergusons that morning. Mrs. Ferguson testified that she did not recall whether she spoke to Mr. Butler before their case was called.

5. The hearing judge was skeptical as to whether GEICO's attorney would have made such a statement, noting that a substantive conversation with the Fergusons about the case in the absence of their attorney might have violated MLRPC 4.2, and suggested that the Fergusons had misunderstood her. GEICO's attorney did not testify at the hearing.

conference and thus could not be at the trial. Mr. Butler suggested that he request another postponement. Mrs. Ferguson told Mr. Butler that she believed that opposing counsel was willing to dismiss FTI as a defendant, and that she did not wish to postpone the trial again. He responded that he would contact GEICO's attorney and that it was possible that the Fergusons would not need to appear for the February 5 trial date. According to Mr. Butler, he then told Mrs. Ferguson that he would also recruit substitute counsel to obtain a postponement, if necessary. Mrs. Ferguson, however, testified that Mr. Butler never told her about this possibility of a substitute lawyer.

According to Mr. Butler, he was unable to reach GEICO's attorney. He then attempted to secure substitute counsel that week for the Friday court appearance. Although he did not appear to recall precisely the attorneys that he contacted, Mr. Butler stated that he would have made this request to two attorneys with whom he shared office space. He submitted phone records of calls made on February 4 to these attorneys as evidence that he attempted to recruit them as substitute counsel. However, he admitted that neither attorney had confirmed that he would act as substitute counsel in the case before Mr. Butler left for Orlando. In interviews with the Commission's investigator, one of the attorneys stated that he had substituted for Mr. Butler in the past, but could not recall whether he had agreed to do so in the FTI case; the other attorney denied that he had ever served as substitute counsel for Mr. Butler. In the end, no attorney attended the District Court on February 5 on behalf of FTI.

Having not received an update from Mr. Butler about the status of their case, the Fergusons went to the District Court on February 5 to see whether their case was on the docket. They discovered that the case had already been called and that a default judgment had been entered against FTI in the amount of $12,213.54. The Fergusons then decided to terminate Mr. Butler as their attorney.

*The Release Agreement*

On February 25, Mrs. Ferguson visited Roland Walker, an attorney who worked in the same building as Mr. Butler, to explore hiring him as their new counsel. Mr. Walker called Mr. Butler and asked him to strike his appearance in the case. Mr. Walker also told Mr. Butler that Mrs. Ferguson would be coming to his office to obtain a release. In the meeting that followed, Mr. Butler told Mrs. Ferguson that he would not collect on any outstanding fees they owed him. He then drafted and printed a "Settlement Agreement and Release" ("Agreement"), which they both signed. Under that Agreement the Fergusons purported to waive all potential causes of action against Mr. Butler while Mr. Butler agreed to waive payment of an outstanding bill and to withdraw his appearance in any outstanding matters. The Agreement did not, however, advise the Fergusons that they could seek advice from independent counsel concerning the Agreement. Nor was there any separate written notice to that effect.

*Judge Sfekas' Conclusions of Law and the Commission's Exceptions*

In a detailed analysis based on these facts, Judge Sfekas concluded that there was clear and convincing evidence that Mr. Butler violated MLRPC 1.1 (competence); 1.3 (diligence), 1.4 (communication); 1.8(h) (conflict of interest); and 8.4(d) (misconduct prejudicial to the administration of justice). However, he also concluded that the Commission had not proved by clear and convincing evidence that Mr. Butler violated MLRPC 1.2 (scope of representation and allocation of authority between the lawyer and client); 3.4(c) (knowing violation of obligation under rule of tribunal); 4.2 (communication with person represented by counsel); 8.1 (false statement of material fact in disciplinary proceeding); or 8.4(c) (misconduct involving dishonesty, fraud, deceit or misrepresentation). Judge Sfekas also found that Mr. Butler's violations were mitigated to some extent by his desire to accommodate his clients' likely misimpression that a proffer by counsel to the court would resolve the case expeditiously, his attempt to

fulfill his own commitments to a bar association event, the limited time that he had to resolve the scheduling conflicts, and his abandonment of the settlement agreement form after he became aware of its deficiencies in a prior disciplinary proceeding.

*Exceptions*

Mr. Butler did not file exceptions to either the findings of fact or conclusions of law. The Commission also did not except to the findings of fact. However, it did contest those instances in which the hearing judge found that a particular rule had not been violated and also excepted to the judge's findings concerning mitigation.

## Discussion

We review the hearing judge's conclusions of law *de novo* pursuant to Rule 16–759(b)(1), in light of the exceptions filed by the Commission. In assessing the Commission's exceptions to the hearing judge's findings as to mitigation, we consider whether the mitigating circumstance was proven by a preponderance of the evidence. Rules 16–759(b)(2)(B), 16–757(b). For the reasons set forth below, we overrule all but one of the Commission's exceptions and adopt the conclusions of the hearing judge as to violations and his findings as to mitigation.

*MLRPC 1.1*

Judge Sfekas concluded that Mr. Butler's failure to appear or to provide substitute counsel for the February 5 trial was a violation of MLRPC 1.1, which requires a lawyer to "provide competent representation to a client." Competent representation "necessarily includes, at a minimum, the attorney's presence at any court proceeding for which he or she was retained, absent an acceptable explanation for that attorney's absence." *Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 403, 784 A.2d 516, 531 (2001). Mr. Butler testified that he attempted to resolve the matter by contacting opposing counsel and by obtaining substitute counsel prior to the February 5 trial date. Nevertheless, he succeeded at neither

effort and left for Orlando with the result that a default judgment was entered against his client. It was Mr. Butler's responsibility to appear or to ensure that FTI was represented at the scheduled trial date. His departure for Florida without resolving the issue was irresponsible and failed to provide his client with a basic element of competent representation.[6]

### MLRPC 1.2

■ MLRPC 1.2 requires that a lawyer abide by a client's objectives concerning the representation. Judge Sfekas found that Mr. Butler had attempted to accommodate the Fergusons' insistence on holding to the February 5 trial date—based on their likely misunderstanding that a brief proffer by their counsel concerning their knowledge of the accident would resolve their liability without need for a trial—with his own prior commitment to participate in an ABA function in Florida. The hearing judge found that, instead of seeking a postponement that likely would have been granted, Mr. Butler endeavored to line up a substitute counsel who would make the proffer and, in the likely event that it did not resolve the case, would obtain a postponement to avoid a default judgment. While Mr. Butler's deficient effort to recruit substitute counsel violated other rules of professional responsibility, it was an attempt to abide by his clients' objectives.[7]

---

6. In its exceptions, the Commission argues that the hearing judge should also have found a violation of MLRPC 1.1 with respect to Mr. Butler's failure to appear for the November 2 trial date, characterizing his absence from the District Court on that occasion as a "decision not to appear." We agree with Judge Sfekas that, in light of the fact that Mr. Butler's scheduling dilemma arose the day before and his efforts to accommodate the schedules of both courts and his clients' desire to resolve expeditiously the civil case, the fact that he did not foresee that the District Court would complete its docket early that morning shortly before his arrival did not constitute incompetent representation.

7. In its exceptions the Commission argues that a failure to appear at a proceeding is a *"per se* violation" of MLRPC 1.2, but cites no authority for that proposition. In any event, for the reasons outlined by Judge Sfekas, we conclude that Mr. Butler did not violate that rule and overrule the Commission's exception.

*MLRPC 1.3*

█ We also agree with the hearing judge that Mr. Butler violated MLRPC 1.3, which requires a lawyer to act with "reasonable diligence and promptness in representing a client." A lawyer's failure to appear for scheduled court dates without good reason is a violation of 1.3. *See, e.g., Attorney Grievance Comm'n v. Byrd*, 408 Md. 449, 478, 970 A.2d 870 (2009). Thus, the failure to appear for the February 5 trial date was a violation of MLRPC 1.3.[8]

*MLRPC 1.4*

█ MLRPC 1.4 requires a lawyer to keep a client reasonably informed about the status of the client's legal matters and to promptly comply with reasonable requests for information. Judge Sfekas concluded that Mr. Butler violated that rule by his failure to adequately inform the Fergusons about his inability to contact opposing counsel prior to the February 5 trial date and his efforts to secure substitute counsel for that date. We agree. Mr. Butler told the Fergusons that he would attempt to resolve their case directly with opposing counsel and that, if he was successful in doing so, they would not need to attend the February 5 court date. Mr. Butler did not adequately follow up with his clients—he did not to inform them that he had been unable to reach opposing counsel and that they were therefore required to be in court on February 5. While Mr. Butler disputes Mrs. Ferguson's testimony that he did not inform them of his plan for substitute counsel, it is undisputed that Mr. Butler never informed the Fergusons whether he had in fact secured substitute counsel. The record demonstrates a significant breakdown in communication be-

---

8. Judge Sfekas' conclusion with respect to the November 2 trial date is somewhat ambiguous as he stated that Mr. Butler violated MLRPC 1.3 by failing to appear for both trial dates but that, in light of the mitigating circumstances summarized in footnote 6 above, Mr. Butler "[did not lack] ... diligence with respect to the November 2, 2009, trial date." In any event, we agree that there is clear and convincing evidence that Mr. Butler failed to act with reasonable diligence as to the February 5 trial date.

tween Mr. Butler and his clients prior to the February 5 trial, in violation of MLRPC 1.4.[9]

*MLRPC 1.8(h)*

■ MLRPC 1.8(h)(2) prohibits a lawyer from settling a potential malpractice claim against the lawyer with an unrepresented client unless the client is advised in writing of the desirability of seeking independent counsel and has an adequate opportunity to obtain advice from such counsel. The Settlement Agreement and Release that Mr. Butler presented to the Fergusons plainly limited his liability for his mismanagement of the FTI case; neither that document nor any other writing presented to the Fergusons at that time advised the clients to seek independent counsel. Judge Sfekas correctly found that Mr. Butler violated MLRPC 1.8(h)(2).

It is notable that Mr. Butler has been reprimanded in a previous disciplinary proceeding for having a client execute a similar agreement without the requisite written advice to seek independent counsel. Judge Sfekas reasoned that, given that the incident with the Fergusons preceded that reprimand, Mr. Butler "was technically already punished" for his practice of using this settlement and release document—which the judge considered a mitigating factor, together with Mr. Butler's assurance that he has now abandoned use of the form.

The Commission's exception to this analysis is well taken. Mr. Butler is presumed to be familiar with the rules of professional conduct, as are all lawyers, and the enforcement of those rules, as has been oft said, is for the protection of the public rather than the punishment of the lawyer who violates them. Mr. Butler's use of this settlement form with a client on multiple occasions without advising the client in writing on

---

9. The Commission originally alleged that Mr. Butler also violated MLRPC 1.4 by failing to inform the Fergusons about his scheduling conflict on the November 2 trial date. Judge Sfekas found that Mr. Butler attempted to contact the Fergusons both the night of November 1 and morning of November 2. These efforts were sufficient for the purposes of MLRPC 1.4.

the desirability of obtaining independent legal advice is an aggravating, rather than mitigating, factor.

*MLRPC 3.4(c)*

▮ MLRPC 3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal." "Knowingly" is defined by MLRPC 1.0(g) as "actual knowledge." Judge Sfekas concluded that Mr. Butler's failure to appear for the two trial dates did not violate that rule. We agree. With respect to the November 2 trial date, it was undisputed that Mr. Butler contacted the District Court concerning his scheduling dilemma and that he arrived at the courthouse by 10:45 a.m. in the belief that the court would still be in session. With respect to the February 5 trial date, Judge Sfekas apparently found credible Mr. Butler's representation that he mistakenly thought he had secured substitute counsel. Neither event rises to "knowing" disobedience of court rules.[10]

*MLRPC 4.2, 8.1, and 8.4(c)*

No exceptions were filed to Judge Sfekas' conclusions that Mr. Butler did not violate MLRPC 4.2 (communications with represented person), 8.1 (misrepresentation in connection with disciplinary matter), and 8.4(c) (misconduct involving dishonesty, fraud, deceit or misrepresentation) and extended discussion is unnecessary.[11]

---

**10.** In its exceptions, the Commission argues that Mr. Butler "voluntarily" failed to appear in court on the two trial dates, and thus knowingly disobeyed his obligation to be in court. For the reasons outlined in footnote 6 above, we overrule the exception with respect to the November 2 date. With respect to the February 5 date, there is no doubt that Mr. Butler acted imprudently in his muddled efforts to obtain substitute counsel, but we cannot conclude that he knowingly flaunted his obligations under the court rules and accordingly overrule the exception.

**11.** MLRPC 4.2, subject to certain qualifications, prohibits an attorney from communicating with a represented person about the subject matter of the representation without the consent of the other attorney. The allegation in this case concerned Mr. Butler's discussions with the Fergusons on February 25, 2010, when they were in the process of retaining Mr. Walker. Judge Sfekas concluded that it was at best

*MLRPC 8.4(a), (d)*

MLRPC 8.4(a) states that it is professional misconduct to violate any of the other disciplinary rules. Accordingly, its violation in this case follows from the other violations already discussed.

■ MLRPC 8.4(d) prohibits "conduct that is prejudicial to the administration of justice." Failure to appear at a scheduled proceeding may constitute a violation of that rule. *Attorney Grievance Comm'n v. Harris,* 366 Md. 376, 404, 784 A.2d 516 (2001). "An attorney plays such an integral role in the judicial process that without his presence the wheels of justice must, necessarily, grind to a halt. The attorney's absence from the courtroom is immediately cognizable by the judge and intrudes upon the operation and dignity of the Court." *Attorney Grievance Comm'n v. Ficker,* 319 Md. 305, 313–315, 572 A.2d 501 (1990). In failing to appear, postpone the proceedings, or ensure that substitute counsel appeared, Mr. Butler was responsible for the Fergusons' lack of representation at the February 5 trial, which was prejudicial to the administration of justice. Judge Sfekas so concluded and so do we.[12]

---

unclear whether the Fergusons were represented by Mr. Walker at the time of that discussion and, in any event, the discussion apparently took place with Mr. Walker's knowledge and implicit permission. We do not find clear and convincing evidence of a violation of this rule.

MLRPC 8.1 prohibits a knowing false statement of a material fact in connection with a bar disciplinary proceeding. MLRPC 8.4(c) prohibits misconduct involving dishonesty, fraud, deceit or misrepresentation. The alleged violations of both rules concerned various statements by Mr. Butler to Bar Counsel about his contacts with, or efforts to contact, opposing counsel and his efforts to obtain substitute counsel. Judge Sfekas credited his testimony and other evidence that he had left voicemail messages for opposing counsel and had explained to the Fergusons his strategy for having substitute counsel for the February 5 proceeding; we accordingly do not find violations of these rules.

**12.** In its exceptions the Commission contends that *any* failure to attend a scheduled court date is an interference with the administration of justice and argues that Mr. Butler violated MLRPC 8.4(d) when he missed the November 2 court date. However, not every failure to appear at a court proceeding is conduct prejudicial to the administra-

## Sanction

 A failure to appear at scheduled court dates arising from a lack of diligence, together with a failure to communicate adequately with clients and an effort to have the uncounseled clients waive any claims against the attorney, warrants sanction. The Commission recommends that Mr. Butler be suspended for no less than 90 days. There are a number of aggravating circumstances in this case that support imposition of a significant suspension. This will be the fourth time that Mr. Butler has been sanctioned in his relatively brief career. He has previously received two reprimands and a 30–day suspension; in each case the sanctions resulted in part from lack of diligence and a failure to communicate adequately with his clients.

 On the other hand, Judge Sfekas found numerous mitigating circumstances, both in relation to the specific violations and in overall consideration of the appropriate sanction. He concluded that Mr. Butler's actions were not the result of a dishonest or selfish motive. And, while Mr. Butler's use of a release form to obtain waivers of liability from his clients without the requisite disclaimer and opportunity for the client to seek independent advice, it is a mitigating circumstance that he has corrected this practice since he was first reprimanded about it. Judge Sfekas also noted positive aspects of Mr. Butler's character and reputation, such as his commitment to community service, his involvement with the Maryland Volunteer Lawyers' Service, and his participation in various professional organizations.[13]

---

tion of justice, particularly when a scheduling conflict is unforeseen and the attorney promptly advises the affected court of the problem. For the same reasons set forth in footnote 6 above, we overrule this exception.

13. For example, Judge Sfekas acknowledged Mr. Butler's active participation in multiple bar associations and recognized that the February 5 scheduling conflict was a result of his commitment to participate in an ABA conference. The Commission argues that Mr. Butler's attendance at the conference was a voluntary decision to not appear in court on behalf of his clients and thus an aggravating circumstance. Neverthe-

Mr. Butler himself contends that a reprimand is appropriate, given that he did not knowingly make misrepresentations or false statements, financially benefit from the misconduct, or act with a malicious intent.

Given Mr. Butler's disciplinary history, a stronger deterrent to future misconduct is in order. Were this Mr. Butler's first and only transgression, a reprimand would perhaps be appropriate. *See, e.g., Attorney Grievance Comm'n v. Mahone,* 398 Md. 257, 271, 920 A.2d 458, 466 (2007) (attorney who failed to appear at court proceedings and was discourteous but had no record of prior disciplinary proceedings given reprimand). Mr. Butler has now been found to have violated MLRPC 1.3 and 1.4 in four separate instances, and has already served a 30-day suspension. The sanction in this case must make clear to Mr. Butler that further lapses in diligence or communication with clients will not be tolerated. It also does not help Mr. Butler's cause that there is no indication that he has compensated, or plans to compensate, his former clients for the financial harm they may have suffered as a result of his conduct. An appropriate sanction in this case is suspension of Mr. Butler from the practice of law for 60 days.

**It is so ordered. Respondent shall pay all costs as taxed by the Clerk of this Court, including costs of all transcripts, pursuant to Maryland Rule 16–761, for which sum judgment is entered in favor of the Attorney Grievance Commission against Anthony I. Butler.**

HARRELL and BATTAGLIA, JJ., concur and dissent.

HARRELL, J., concurring and dissenting, in which BATTAGLIA, J., joins.

Although I agree with the Majority opinion's discussion and resolution of the exceptions, I depart somewhat from its

---

less, while Mr. Butler's failure to ensure that substitute counsel appeared on behalf of the Fergusons is inexcusable, he had little advance warning of the conflict and did make some effort to accommodate his various professional commitments.

analysis and imposition of sanction. Rather than a 60–day suspension, I would impose a 90–day suspension. Less than that, in my judgment, will not be a "significant suspension" (Majority op. at 538, 44 A.3d at 1031–32) or "a stronger deterrent" (Majority op. at 539, 44 A.3d at 1032), in light of Butler's disciplinary track record. In short, I have my doubts that any incentive to mend one's ways and avoid the next "occasion of sin" (with a predictably greater penance) is sufficient at the level the Majority selects.[1]

Considering the relatively narrow window of practice within which Butler's overall disciplinary record was formed and the remarkably common subject matter characteristics of the transgressions, two reprimands and a 30–day suspension had no effect. That apparent failure suggests to me that Butler has not yet identified what constitutes the proper conduct of the practice of law. His ongoing "active participation in multiple bar associations," noted by the Majority (Majority op. at 538–39 n. 13, 44 A.3d at 1032 n. 13), would be deserving ordinarily of approbation, but here implies that it is part of the problem with compliance with his primary duties to clients and our courts.

It is my judgment that a 90–day suspension is at the very least required to persuade Butler (and the Bar) that description of a suspension as "significant" or "a strong deterrent" is more than gainsaid or mere rhetoric.

---

1. Noting that a sanction is not meant to punish the errant lawyer, but rather to protect the public and demonstrate to the Bar ethical expectations and boundaries, my remarks are tendered in that vein, and not as a "sentencing judge."