72 A.3d 174

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Melissa D. GRAY.

Misc. Docket AG No. 22, Sept. Term, 2012.

Court of Appeals of Maryland.

Aug. 15, 2013.

James P. Botluk, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

Melissa Donnelle Gray, Towson, MD, for Respondent.

Argued before BARBERA, C.J., HARRELL, GREENE, ADKINS, McDONALD, BELL * and DALE R. CATHELL (Retired, specially assigned), JJ.

CATHELL, J.

The Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action in which it asserted that Melissa D. Gray, Respondent, violated certain of the Maryland Lawyers' Rules of Professional Conduct [1] in respect to two client matters and in respect to the failure to cooperate with Bar Counsel.

It was alleged that Respondent violated the provisions of Rule 1.3.[2] Diligence; Rule 1.4.[3] Communication; and Rule

---

\* Bell, C.J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

**1.** We are referring to these Rules when, hereinafter, we discuss particular rules unless the context clearly indicates otherwise.

**2.** "A lawyer shall act with reasonable diligence and promptness in representing a client."

8.1(b),[4] (failure to cooperate with Bar Counsel) in respect to Client Magdalene Foard. It was also alleged in the Petition that Respondent violated the provisions of Rule 1.1.[5] Competence; Rule 1.3. Diligence; Rule 1.4 Communication; Rule 1.15.[6] Safekeeping Property; 1.16.[7] Declining or Terminating Representation in respect to Client Hillary Figinski.[8] Addi-

---

**3.** As relevant to the instant matters Rule 1.4 provides that
(a) "A lawyer shall:
(2) keep the client reasonably informed about the status of the matter; and
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**4.** " ..., ... a lawyer in connection ... with a disciplinary matter, shall not:
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from ... [a] disciplinary authority,...."

**5.** "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

**6.** In respect to this matter the relevant provisions of this rule provide:
"(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.
(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons ... claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which interests are not in dispute."

**7.** As relevant to the instant case the rule provides:
"(d) upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred...."

**8.** The complainant in the Figinski matter was actually an opposing counsel, Bradford Carney, Esquire.

tionally, in the Figinski matter, Bar Counsel again alleged that Respondent violated the provisions of Rule 8.1(b) Bar Admission and Disciplinary Matters in that it was alleged that the Respondent failed to cooperate with Bar Counsel. Finally, in the Figinski, matter Bar Counsel also alleged that Respondent violated the provisions of Rule 8.4.(c) Misconduct, i.e. that Respondent engaged "in conduct involving dishonesty, fraud, deceit or misrepresentation."

Pursuant to Rule 16–757,[9] this Court ordered that an evidentiary hearing on the matters be heard before Judge Susan Souder of the Circuit Court For Baltimore County. Judge Souder rendered her findings of fact and conclusions of law on the 7th of November 2012, and the record was then transmitted to this Court. Bar Counsel then filed "PETITIONER'S EXCEPTIONS AND RECOMMENDATION FOR SANCTION." Respondent took no exceptions. Oral argument was held on June 6, 2013. Both at the hearing level and before this Court, Respondent represented herself.

Judge Souder made certain findings of fact and conclusions as to the Foard matter, including in relevant part the following:

"In 2008, Magdalene Foard ('Client') retained Respondent to represent her in a divorce case against David Foard. A Judgment of Absolute Divorce was entered on July 27, 2009, with the Court retaining jurisdiction for the purposes of establishing a Qualified Domestic Relations Order ('QDRO'). The QDRO would make Client the alternate payee of David Foard's retirement benefits and transfer to Client one-half of those benefits.

---

**9.** In relevant part, Rule 16–757 provides:
(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. . . .
(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.
. . .

Respondent sent a letter on August 13, 2009, to David Foard's attorney, William Evans, stating that Respondent was preparing a QDRO. Six weeks later Respondent received a letter from Evans, urging her to finish the QDRO. On January 23, 2010, Client sent a letter to Respondent, asking when the QDRO was going into effect; Client also was concerned that she had not returned Client's telephone calls for two months. On July 19, 2010, Respondent sent a letter to David Foard, directing him to forward his pension payments to Client's new address and indicating that the QDRO was not yet in effect. A month later, Evans sent Respondent a letter that the QDRO still was not resolved.

Client testified that she had talked to Respondent's secretaries 20 times during this period but talked with Respondent only once. Respondent told her the QDRO was on a judge's desk, waiting to be signed. Respondent testified she had prepared the QDRO and sent it to David Foard, but it came back from the Chambers judge twice, unsigned. . . .

In December 2011, Respondent went on several week's medical leave but had her office follow up on the status of the QDRO. Respondent stated that Judge Norman signed the QDRO on January 5, 2012. Respondent testified that she forwarded the QDRO to the Plan Administrator of David Foard's retirement benefits on January 13, 2012.

## *FOARD V. FOARD: CONCLUSIONS OF LAW*

The Court does not find there is clear and convincing evidence that Respondent was not diligent in her representation of Client. There was no evidence as to when the QDRO was submitted to the Court by Respondent. The evidence presented by Bar Counsel was vague as to how long the prepared QDRO was sitting on a judge's desk, waiting to be signed The Court also does not find clear and convincing evidence that Respondent failed to communicate with Client. Respondent informed Client the QDRO was in a judge's hands. Rule 1.4 does not require repeating the same information each time a client inquires about a matter.

By her own admission, however, Respondent did not respond to repeated letters from Bar Counsel about the Foard Case. There is, therefore, clear and convincing evidence that Respondent violated Rule 8.1(b)."

Neither party took any exceptions to the judge's findings and conclusions in respect to the Foard matter.

In the Figinski matter, the hearing judge, as relevant here, made the following findings and conclusions of law:

"In 2002, Hillary Figinski ('Client') retained Respondent in *Corso v. Figinski*, a case that resulted in distribution of money from the sale of a home owned by the parties. Proceeds from the sale were placed in [an] escrow account in Bay National Bank. Respondent and Corso' attorney, Bradford Carney, each was an escrow agent/trustee of the account. [footnote omitted] Client's share was $6,729.78 plus interest, pursuant to a Court Order of January 9, 2004. The final paragraph of the Order reads as follows:

**ORDERED** that Bay National Bank upon presentation of a True Test Copy of this Order shall immediately release the parties' funds as delineated hereinabove without further action on the part of Bradford G.Y. Carney, Esquire or Melissa D. Gray, Esquire. [footnote omitted]

From January 2004 through March 2008, Carney sent repeated letters first questioning and later warning Respondent that Client's money was still in the escrow account. . . . Respondent informed Client by letter on February 3, 2004 that Respondent filed a notice of appeal on her behalf and asked for money to pay for a transcript. Client testified that she never saw the February 3, 2004 letter; Respondent never ordered a transcript. Respondent presented no evidence she followed up with Client once the Court of Special Appeals dismissed the appeal later that month. . . .

. . . . In April 2008, after Carney threatened to report Respondent to Bar Counsel, Respondent closed the escrow account and had Bay Bank draw a check for $7,113.10, payable to Client. Respondent testified that Carney's April 2008 letter was the first time she became aware that Client had not received her money.

On January 18, 2011, Carney wrote to Respondent that Client had never cashed or deposited the 2008 check. As a result, he informed Respondent the money would escheat to the State of Maryland. A week later, Carney sent a second letter on the same topic informing Respondent he would report her to Bar Counsel if the matter was not addressed.[10] Respondent did nothing in response.

In October 2011, Bay Bank FSB, the successor to Bay National Bank, sent Final Notice that it would close the account on January 9, 2012, with the money to escheat to the State. Carney sent Respondent this Notice on December 15, 2011, while Respondent was on medical leave. Respondent went to the bank on January 9, 2012, her first day back from medical leave, and obtained another check for $7,113.10, payable to Client. She testified she mailed it to Client. On February 23, 2012, Client sent Respondent a letter stating she was 'taken aback' that Respondent never told Client she had been entitled to money for eight years and asking, 'Where is this money?" [11]

## *CORSO V. FIGINSKI: CONCLUSIONS OF LAW*

. . .

"The Court finds by clear and convincing evidence that Respondent was not diligent in her representation of Client

---

**10.** This case should caution all attorneys of the special circumstances that exist when opposing counsel set up joint escrow or trust accounts. Each attorney may be subjecting themselves to the consequences of the actions of the other attorney in respect to how the accounts are managed, such as in this case. In such circumstances each attorney, in order to protect himself or herself and in order to comply with the rules, may be required to report matters to Bar Counsel. Mr. Carney did so in this case.

**11.** The evidence presented below is uncontradicted that the two checks were made payable to Client. Nonetheless, it appears that the checks (the last duplicate one in particular) may have never been cashed. If not, it would appear that the money due Client may have escheated to the State. If that is the case, there may be means available to recover that money through administrative or judicial proceedings.

from the time of the January 9, 2004 Order through the Client's February 23, 2012 letter. Neither did . . . [Respondent] adhere to Rule 1.4 during this period. . . . Characterizing a client as 'low maintenance' does not give an attorney license to ignore that client.

The Court does not find clear and convincing evidence that Respondent violated Rule 1.1 on competence . . . . [footnote omitted]

The Court does not find clear and convincing evidence that Respondent violated Rule 1.15 by not promptly distributing property about which there was no dispute. First, the cases cited under Rule 1.15 concern trust funds or escrow funds set up withing an attorney's practice; it is unclear that a fund set up by opposing attorneys solely for receiving money in a single case falls under the Rule. Second, the January 9, 2004 Court Order states that upon presentation of a True Test Copy of the Order, Bay National Bank was to immediately release the parties' funds without further action on the part of the attorneys. Corso's money was withdrawn, so a True Test Copy must have been presented, thereby freeing both parties' money. . . . [footnotes omitted]

This Court does not find clear and convincing evidence that Respondent violated Rule 1.16. No evidence was presented about Respondent terminating, or even attempting to terminate, her relationship with Client.

The Court also does not find clear and convincing evidence that Respondent violated Rule 8.4. . . .

As in the *Foard* case, however, Respondent, by her own admission, did not respond to repeated letters from Bar Counsel. There is, therefore, clear and convincing evidence that Respondent violated Rule 8.1(b)."

Most recently in *Attorney Grievance Commission of Maryland v. Chapman*, 430 Md. 238, 273, 60 A.3d 25, 46 (2013), quoting from several cases, we stated:

" 'This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland. In our independent review of the record, we accept the hearing judge's

findings of fact as prima facie correct unless shown to be clearly erroneous. We conduct an independent review of the hearing judge's conclusions of law pursuant to Rule 16–759(b)(1). [footnote and citations omitted]' "

■ Respondent took no exceptions to the hearing judge's findings or conclusions, but primarily appeared before this Court in respect to sanctions. Bar Counsel took exception only to the hearing judge's conclusion that Respondent did not violate the provisions of Rule 1.15(e).[12] Citing an assemblage of our cases, *Attorney Grievance Comm'n v. Johnson,* 409 Md. 470, 976 A.2d 245 (2009), *Attorney Grievance Comm'n v. Kendrick,* 403 Md. 489, 943 A.2d 1173 (2008), *Attorney Grievance Comm'n v. Sullivan,* 369 Md. 650, 801 A.2d 1077 (2002), and *Attorney Grievance Comm'n v. Clark,* 363 Md. 169, 767 A.2d 865 (2001), Bar Counsel argues that "Rule 1.15 applies to all funds held by an attorney on behalf of a client or third person...." He further asserts that "[T]he duty to disburse funds pursuant to Rule 1.15(e) should apply when an attorney has a fiduciary responsibility.... In the case at bar, the account was truly an attorney trust account, even though it was opened by two attorneys specifically to hold funds from a single transaction...."

We agree with Bar Counsel. The classification of a trust or escrow account as such, generally does not depend upon the number of attorneys creating the account or whether it is an account for a single purpose or multiple (if or when permitted by law or rule) purposes. It achieves that classification via the nature of the purposes for which it was created. When there are multiple attorneys with fiduciary responsibilities in respect to a single trust account, or multiple trust accounts,

---

**12.** In *Attorney Grievance Commission v. Floyd,* 400 Md. 236, 250, 929 A.2d 61, 69 (2007), we quoted from a prior case:

"Neither Petitioner nor Respondent took exception to the hearing judge's findings of fact. Therefore, we accept the hearing court's findings of fact, as established, for the purpose of determining the appropriate sanction. Maryland Rule 16–759(b)(2)(A); *Attorney Grievance Comm'n v. Logan,* 390 Md. 313, 319, 888 A.2d 359, 363 (2005)."

each attorney has a duty to manage the account and to ensure that the other attorneys with similar responsibilities to a particular fund fulfill their responsibilities. The Preamble to the Maryland Lawyer's Rules of Professional Conduct, in paragraph (12), provides:

"The legal profession's relative autonomy carries with it special responsibilities of self-government. The profession has a responsibility to assure that its regulations are conceived in the public interest and not in furtherance of parochial or self-interested concerns of the bar. *Every lawyer is responsible for observance of the Maryland Lawyers Rules of Professional Conduct. A lawyer should also aid in securing their observance by other lawyers.* Neglect of these responsibilities compromises the independence of the profession and the public interest which it serves. [Emphasis added.]"

In furtherance of that purpose, Rule 8.3 provides:

**"Reporting Misconduct.**

(a) A lawyer who knows that another lawyer has committed a violation of the Maryland Lawyers' Rules of Professional Conduct that raises substantial question as to that lawyer's honesty, trustworthiness or *fitness as a lawyer in other respects, shall inform the appropriate authority.* [Emphasis added.]"

Petitioner's exception is sustained. A lawyer's fiduciary responsibilities to a trust or escrow account do not depend upon whether the responsibility is shared with other lawyers (or other persons).

## SANCTION

■ Respondent has recently been sanctioned by a reprimand in respect to somewhat similar misconduct. Bar Counsel now recommends an indefinite suspension as an appropriate sanction for the present misconduct. Respondent argues that a reprimand is the appropriate sanction.

Recently, in *Attorney Grievance Commission of Maryland v. Walker–Turner, Sr.,* 428 Md. 214, 233, 51 A.3d 553, 564 (2012), we stated:

> "In imposing sanctions in attorney discipline matters, 'our aim is to protect the public and the public's confidence in the legal profession rather than to punish the attorney ... [and] to deter other lawyers from violating the MLRPC. *Att'y Griev. Comm'n v. Taylor,* 405 Md. 697, 720, 955 A.2d 755, 768 (2008). We evaluate the facts and circumstances of each case to ensure that the attorney's sanction is commensurate with the gravity and intent of the misconduct. *Att'y Griev. Comm'n v. Ruddy,* 411 Md. 30, 76–77, 981 A.2d 637, 664 (2009). We have looked often to the ABA's standards for attorney sanctions which pose four rhetorical questions as an analytical template: '(1) What is the nature of the ethical duty violated?; (2) What was the lawyer's mental state?; (3) What was the extent of the actual or potential injury caused by the lawyer's misconduct?; and (4) Are there any aggravating or mitigating circumstances?' *Id.* [quoting *Taylor,* 405 Md. at 721, 955 A.2d at 769]."

For somewhat similar, albeit more serious misconduct,[13] in *Chapman, supra,* we imposed a sanction of an indefinite suspension with the right to reapply after 90 days. In *Attorney Grievance Commission v. Walker–Turner,* 428 Md. 214, 233–235, 51 A.3d 553, 564–565 (2012), a case involving the failure to appear for a court proceeding, we first noted that the respondent had a prior 30 day suspension for the unauthorized practice of law in 2002, and in 2007 had been reprimanded twice by the Attorney Grievance Commission. We sus-

---

**13.** Chapman was found to have committed violations of Rules 1.4 in respect to failure to communicate issues, 1.5(a) as to an unreasonable fee arrangement, 1.5(c) an incomplete fee arrangement, 5.3 as to an improper consulting arrangement, 5.4 an improper fee sharing agreement, 8.4 for conveying misleading and misrepresented facts to clients. All violations arose out of a single transaction with a mortgage related company. In responding to the mortgage crisis, Chapman had entered into an agreement with a mortgage modification entity in order to help 'work-out' mortgage situations. Upon the issues above being brought to his attention he had "wound down" such services. He refunded any relevant fees and he had no prior disciplinary matters.

pended Walker–Turner for sixty days. In *Attorney Grievance Commission v. Butler, Jr.,* 426 Md. 522, 526, 44 A.3d 1022, 1025 (2012), the hearing judge concluded that Butler, Jr. had "failed to provide competent and diligent representation, inadequately communicated with clients, had a conflict of interest . . . and committed misconduct prejudicial to the administration of justice." We opined at 538, 44 A.3d 1022:

"A failure to appear at scheduled court dates arising from a lack of diligence, together with a failure to communicate adequately with clients and an effort to have the uncounseled clients waive any claims against the attorney warrants sanctions. . . . There are a number of aggravating circumstances in this case that support imposition of a significant suspension. This will be the fourth time that Mr. Butler has been sanctioned in his relatively brief career. He has previously received two reprimands and a 30–day suspension; . . ."

We held at page 539, 44 A.3d 1022 that: "An appropriate sanction in this case is suspension of Mr. Butler from the practice of law for 60 days."

In *Attorney Grievance Commission of Maryland v. Brown,* 415 Md. 269, 281, 999 A.2d 1040, 1046–1048 (2010), we stated:

"In looking at the nature of Brown's violations, we recognize that they did not grown out of a single act of dishonesty, but rather are based on three separate instances of deliberate deceit. Brown misrepresented to Coston that he had sent a release to Garcia. He then duplicated this lie to Bar Counsel on two separate occasions. . . . In addition to the deceit, Brown improperly withdrew funds from his trust account by drawing Garcia's check payable to cash.

. . .

. . . . Fourth, despite his earlier hindrance of Bar Counsel's initial investigation, Brown has conceded wrongdoing before this Court and appears willing to take responsibility for his actions. . . ."

We suspended Brown for 90 days.

In a series of other relatively recent cases, we have suspended attorneys for periods from 30 days to 90 days. In

*Attorney Grievance Commission v. Gordon,* 413 Md. 46, 991 A.2d 51 (2010), we noted:

"In the present case, the prohibited conduct involved Respondent who, while representing a client in a breach of contract case, submitted what appeared to be the original signature page of a year 2000 contract, but was, instead, a replacement signature page signed by his client the night before the 2005 summary judgment hearing. The existence of the signature was a material issue in the litigation, and Respondent did not inform the court that the signature page had been signed five years after the fact and during litigation involving the contract, but rather, filed pleadings falsely suggesting that the page represented the original. Six weeks later, Respondent and his client disclosed to opposing counsel during discovery, but not to the court, that the signature page had been signed on the eve of summary judgment and also disclosed the original signature page from 2000. This conduct is clearly violative of MRPC 3.3(a)(1), 3.3(a)(4), and 8.4(c).

In this case, Respondent has no disciplinary record from his twenty years of practicing law, he has accepted full responsibility and expressed remorse for his actions, the misrepresentation does not appear to be part of a pattern of misconduct, and his actions were not financially self-serving. Gordon's conduct is most akin to that of the attorney in Rohrback, and we, therefore, hold that Gordon's misconduct warrants a forty-five day suspension."

In *Attorney Grievance Commission v. Tanko, Jr.,* 408 Md. 404, 426, 969 A.2d 1010, 1023–24 (2009), the Court stated:

"As the hearing judge found, the petitioner filed expungement petitions for charges ineligible for expungement in an attempt to have the petitions 'slip by' the court and be granted. Further, the hearing judge found that the respondent was aware of the three-year waiting period—this was evidenced by his acknowledgment to that effect in a letter to Bar Counsel, as well as by his striking certain wording in the petitions he filed—and that his actions in this regard were misleading to the District Court. While the respon-

dent's actions were indeed misleading and, to a lesser degree, negligent, his actions do not rise to the level necessitating disbarment. *See Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 418, 773 A.2d 463, 488 [ (2001) ] (dishonest—perjurious and fraudulent—conduct ordinarily should result in disbarment.) And when we consider, in mitigation, the respondent's lack of any prior disciplinary action and, as stated by the hearing judge, 'his misunderstanding of the relevant case and statutory law[,][previous brackets in original]' the appropriate sanction in this case is a sixty day suspension."

In *Attorney Grievance Commission v. Floyd, supra,* at 239, 929 A.2d 61, we discussed the type of violation occurring in that case and the appropriate sanction:

"The Attorney Grievance Commission of Maryland ('Petitioner'), acting through Bar Counsel and pursuant to Maryland Rule 16–751(a), filed a petition for disciplinary or remedial action against Respondent, Angela Therese Floyd, on August 30, 2006, in which Bar Counsel alleged that Respondent violated Maryland Rules of Professional Conduct 8.4(c) (Misconduct) when, during an employment application process for a legal position, in order to secure a higher salary, she acted intentionally to deceive the Federal Trade Commission ('Commission') into believing that she and her husband had a 'purely' employer-employee relationship.

. . .

. . . . In this case, Respondent has no prior disciplinary record, and the instant violation is not part of a pattern of misconduct. Additionally, she acknowledged her error. Considering all of the circumstances, Respondent's deceitful conduct warrants a ninety day suspension from the practice of law."

Citations omitted.

In *Attorney Grievance Commission v. Hill,* 398 Md. 95, 97, 105, 919 A.2d 1194, 1198 (2007), the Respondent admitted that he had failed to prepare and file and Eligible Domestic

Relations Order (EDRO), prior to his client getting remarried which resulted in his client's ineligibility to "share in his ex-wife's pension." The Court noted other violations:

" . . . . He attended, with his client, his client's ex-wife and her counsel, a pre-trial conference in the Circuit Court. . . . before a Master, at which an agreement was reached. . . . the respondent 'agreed to prepare and submit a written consent order within two weeks of that date.' He did not do so. Nor had he done so after six months, despite calls from the Master's office 'inquiring about the status of the order' and calls and two letters from Mr. Wilson.

When the order had not been filed after more than six months, a judge of the Circuit Court issued an order for the respondent to appear in court and 'explain the reason for his failure to submit the order and show cause why sanctions and costs should not be imposed.' Without informing his client that the show cause order had been issued or that the parties had been ordered to appear in court, the respondent prepared a Consent Order, apparently sent it to opposing counsel for signature and submitted it, signed by both counsel, to the court on the date scheduled for the show cause hearing. The respondent did not send the Consent Order to his client for review, nor even inform his client that he had prepared one, which had been submitted to and signed by the court.

Bar Counsel made two requests of the respondent to produce his file in the Wilson matter. Although they were received, the respondent did not comply. His only explanation for not having done so was: 'I knew I messed up with Beier and Wilson, so, I guess I just didn't really want to face it in addition to all the other things that were going on.' "

Citations omitted.

In imposing a sanction of a thirty day suspension, we said: " . . . [T]he respondent has a prior grievance history, two dismissals with a warning, as opposed to unreported reprimands. Moreover, he presented evidence, . . . of mitigation

factors, which, it [the hearing court] concluded, were responsible, at least in part, for the respondent's misconduct."

We discussed commingling of trust funds in *Attorney Grievance Commission v. Obi.*, 393 Md. 643 at 648, 649 and 660–661, 904 A.2d 422, 425, 431 (2006):

"The commingling of funds by Respondent first came to Bar Counsel's attention when Chevy Chase Bank notified Bar Counsel that Respondent's client trust account was overdrawn.... Respondent replied that the check in question was used to pay the tuition of one of his children. Respondent admitted that this constituted commingling and said that he appreciated the severity and possible consequences of his conduct. He further assured Bar Counsel that the funds in the account were not client funds, but were his personal funds for services rendered. Bar Counsel's subsequent investigation uncovered other instances of such commingling.

In the course of the investigation Respondent failed to provide certain documents that were requested by Bar Counsel.

. . .

.... Respondent attributed his conduct to a 'temporary lapse in professional judgment' resulting from his wife's ill health and corresponding financial consequences and the impact of a 'slow economy' on his law practice ....

. . .

.... Respondent failed to properly maintain and keep records for his escrow account and commingled his own funds in his attorney trust account. Respondent also failed to fully cooperate with the investigation, ...

.... [W]e find that the appropriate sanction in the instant case is a suspension for 30 days...."

Citations omitted.

When ordering a thirty day suspension in *Attorney Grievance Commission v. McClain,* 373 Md. 196, 212, 817 A.2d 218, 228 (2003), we said:

"We believe that a thirty day suspension suffices as a sanction in this case. As we have seen, the respondent violated Rule 1.15 by failing to hold the entire amount of the deposit given him by the successful bidder at the foreclosure sale and Rule 16–606 by not properly naming and designating his escrow account as an attorney trust account.... [T]he hearing court did not find clear and convincing evidence that it was willful and consciously done for an unlawful purpose. As to the latter, the violation has been corrected and, indeed, that was done shortly after the respondent was made aware of the problem. In addition the record reflects that, subsequent to the events giving rise to this case, the respondent has taken a course in escrow account management. The respondent has no history of disciplinary proceedings."

In the somewhat unusual case of *Attorney Grievance Commission v. Oswinkle*, 364 Md. 182, 772 A.2d 267 (2001), Oswinkle, in response to a client's inquiry as to the conduct of another attorney, advised her that she could file a complaint with Bar Counsel. She did and Bar Counsel started an investigation in respect to the other attorney. During that process Bar Counsel sought certain information from, and cooperation by, Oswinkle. Oswinkle did not cooperate. As a result Bar Counsel sought to have Oswinkle suspended "for no less than sixty days." The Court declined to suspend Oswinkle and, instead, sanctioned him with a reprimand.

In *Attorney Grievance Commission v. Fezell*, 361 Md. 234, 760 A.2d 1108 (2000), while the Court also found that Fezell had violated Rules 1.3, 1.4, 3.2 in respect to diligence, communication, etc., the main focus of our sanctions related to Rule 8.1(b) and Fezell's failure to cooperate with Bar Counsel. There we stated, "Respondent's violations of the Rules of Professional Conduct regarding diligence, communication, expediting litigation, and responding to lawful demands of Bar Counsel are serious. We agree with Bar Counsel and find that a suspension for sixty days is the appropriate sanction."

We upheld some of the hearing judge's findings and conclusions in *Attorney Grievance Commission v. Harris–Smith*, 356 Md. 72, 737 A.2d 567 (1999). The primary violation was the respondent's unauthorized practice of law in this State. She was also found to have violated 1.16(d) in that she had not properly refunded a client's funds upon the termination of representation, violated Rule 5.3(b) in respect to a failure to supervise employees of the law practice and Rule 1.15(b) because she failed to notify a client upon receiving funds to which the client was entitled. We imposed a sanction of a thirty day suspension.

In *Attorney Grievance Commission v. Adams*, 349 Md. 86, 99, 706 A.2d 1080, 1086 (1998) we held:

"In the case at hand, although respondent's actions were sloppy and negligent, and involved the inappropriate handling of client funds, his conduct did not amount to an intentional misuse of the client's funds. Further, in mitigation, the hearing judge found that this was respondent's first such violation, the client was a personal friend of the respondent, respondent's primary intentions in 'loaning' the money were good, and the $1,900 given to respondent by the client subsequently was paid to the Comptroller. Accordingly, we believe the appropriate sanction is a thirty-day suspension from the practice of law."

In light of the violations committed by Respondent, especially in respect to her failure to cooperate with Bar Counsel and her prior disciplinary matters and in light of our prior cases aforesaid, in which we have sanctioned attorneys for somewhat similar violations (as to severity of conduct), we hold that the proper sanction in the present case is a 60 day suspension. It is so ordered. The suspension shall commence 30 days from the date of this order.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE**

534

ATTORNEY GRIEVANCE COMMISSION AGAINST MELISSA D. GRAY.